269 So.2d 20 (1972)
Peter R. VINCI, As Personal Representative of the Estates of Antoinette Vinci Haynes, Deborah Alyce Haynes, and Dawn Anne Haynes, Deceased, Appellant,
v.
Sheldon J. GENSLER, As Administrator of the Estate of Dupree Arnold Haynes, Jr., Deceased, and Fireman's Fund Insurance Company, Appellees.
No. 71-901.
District Court of Appeal of Florida, Second District.
November 15, 1972.
Rehearing Denied December 12, 1972.
Richard V. Harrison, Sarasota, for appellant.
Donald V. Bulleit, of Fowler, White, Gillen, Humkey, Kinney & Boggs, St. Petersburg, for appellees.
PER CURIAM.
Affirmed on authority of Orefice v. Albert, Fla. 1970, 237 So.2d 142; and Webb v. Allstate Insurance Company, Fla.App. 1972, 258 So.2d 840.
PIERCE, C.J., and HOBSON, J., concur.
LILES, J., dissents with opinion.
LILES, Judge (dissenting):
The majority affirms the trial judge's order and relies on Orefice v. Albert, Fla. 1970, 237 So.2d 142. I dissent.
Appellant Peter R. Vinci, as personal representative of the Estates of Antoinette Vinci Haynes, Deborah Alyce Haynes and Dawn Anne Haynes, deceased, brings this action against Sheldon J. Gensler, as Administrator of the Estate of Dupree Arnold Haynes, Jr., deceased, and Fireman's Fund Insurance Company.
The entire Haynes family died in an airplane accident caused by the alleged negligent piloting, operation or maintenance of the airplane by the deceased father, pilot and owner. The deceased pilot-owner was the husband of one of the passengers and the father of the deceased minor children who were passengers. The trial judge dismissed the complaint with prejudice and relied on Orefice v. Albert, supra. Appellant assigns as error the dismissal of Fireman's Fund Insurance Company, as a party-defendant, and also the dismissal of the complaint brought by the personal representative.
It would be unnecessary for this court to go to the first question, that of the dismissal of the insurance company, unless it also reversed the trial judge in the dismissal of the complaint. The complaint, of course, was dismissed on the interspousal and parental immunity doctrines which are old established doctrines in Florida law but have, I think, outlived their usefulness. Particularly is this so under the factual situation presented here. The rule against a husband suing a wife or minor unemancipated children suing either parent is historically based upon maintaining family unity and harmony. Here, none of the family survived the crash. There is no family unity to maintain and unfortunately no family harmony to protect.
We have been unable to find a case in Florida jurisprudence that fits this set of facts. Appellant cites to us Owen v. Owen, Fla.App. 1970, 234 So.2d 165, as an indication of Florida's abandonment of the interspousal immunity doctrine. We believe that case was correctly decided but it sheds no light on the principle here involved. In that case the court merely held that the question of the emancipation of the nineteen year old son was for the jury. I simply think the reasons for the rule are absent under the factual situation here and the trial judge's order dismissing should be reversed.
*21 Basically, however, I would adopt the reasoning in Justice Ervin's dissent in Bencomo v. Bencomo, Fla. 1967, 200 So.2d 171, where he quoted from Harper and James On Torts, Vol. I, 1956, Sec. 8.10 p. 646.
"`The metaphysical and practical reasons which prevented [suit between husband and wife] at common law are no longer applicable. The danger to the family peace and tranquillity here, as in the case of suits by an infant against his parent, has been grossly overemphasized.'"
No purpose would be accomplished by a long dissertation on why interspousal and parental immunity should be abolished. Suffice it to say, it had its origin in 1891 in a Mississippi case grounded solely on an assertion that it was required by public policy for "the peace of society ... [and] the repose of families... ." Hewlett v. George (1891), 68 Miss. 703, 9 So. 885, 13 L.R.A. 682. For no apparent good reason the courts have continued to follow it. Some cases, in addition to maintaining family unity and harmony, rely on the danger of fraud and collusion. This, I think, denies the fact that judges are able to detect collusion and fraud when they see it. It also overlooks the fact that lawyers are officers of the court and practice pursuant to an oath against bringing such suits and a canon of ethics which prohibits such action.
Dean Prosser's treatment of parental immunity is cited in Brennecke v. Kilpatrick, Mo. 1960, 336 S.W.2d 68, 70-71, wherein he said:
"`The courts which deny the action have relied heavily on the analogy of husband and wife, which seems quite inapplicable because of the difference in the common law concept of the relations, and the absence of statutes to be construed. In addition, they have invented much the same variety of unconvincing reasons as in the case of the marital relation. The danger of "fraud" has been stressed, although it is difficult to see why it is any greater, as between the parties themselves, than in any other tort action involving an infant; and likewise the possibility that the defendant might inherit the amount recovered in case of the plaintiff's death, or that the family exchequer might be depleted at the expense of other children  neither of which reasons seems to outweigh the desirability of compensating the injured one for his damage. But again, as in the case of husband and wife, the chief reason offered is that domestic tranquillity and parental discipline and control would be disturbed by the action  and again on the theory that an uncompensated tort makes for peace in the family and respect for the parent, even though it be rape or a brutal beating, and even though the relation itself has been terminated by death before the suit. On this basis the action has been allowed where the child has been "emancipated" by the parent's surrender of the right to his earnings and services, and to parental control. But none of these arguments has been held sufficient to bar an action by or against an unemancipated minor where property is involved, although they are all equally applicable in such a case; and an action for a personal tort has been permitted between minor brother and sister.'" Prosser, Law of Torts, (2nd Ed.) § 101, pp. 676-77.
Dean Prosser's view is finding increasing acceptance and both doctrines have been riddled with numerous exceptions and in many jurisdictions have been abolished outright.
Indiana recently abolished the interspousal immunity doctrine. Brooks v. Robinson, Ind. 1972, 284 N.E.2d 794. The reasons set forth there are equally applicable to the question of parental immunity. The court noted the glaring inconsistency of not allowing tort actions where contract and property actions are allowed and registered disbelief that tort actions are a greater threat to family harmony than other types of suits. Neither did the court believe *22 that allowing interspousal tort actions would promote fraud, collusion and trivial litigation, as argued especially where insurance is involved. Likewise, I am persuaded that jurors do not check their common sense at the courthouse door and the trial court will instruct them on the credibility of witnesses. I also agree with the Indiana court that if stare decisis is applied so as to obscure reality our system of jurisprudence would be rendered forever impotent.
Another strong argument against retention of this doctrine of family immunity can be made on the basis of the rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Sections 2, 9, and 21 of the Declaration of Rights, Florida Constitution. Tort immunity is too imperfect a tool for the attainment of the laudable goals its advocates espouse to justify denial of these constitutional rights.
It therefore appears to me that in the society in which we live the greater weight of logic is on the side of reversing and abrogating the ill-founded doctrine of interspousal and parental tort immunity. They are supported by mistaken axioms and ill-founded reasons and in this particular case even those ill-founded reasons are absent. I further believe that the courts are capable of distinguishing between a fraudulent raid on a treasury of an insurance company and legitimate claims of a wife or child where the benefit of liability protection has been purchased by the husband and father. I cannot believe that the father purchased this insurance policy to protect all other wives and children but not his own.
Having answered the question of interspousal and parental immunity, I believe the law places insurance carriers of airplanes in the same status as any other real party in interest. This question was specifically answered in Beta Eta House Corp. v. Gregory, Fla. 1970, 237 So.2d 163, 165, when the court answered the following question in the affirmative:
"`The principles announced in Shingleton v. Bussey, supra, are applicable not only to automobile liability insurance but also to other forms of liability insurance.'" (Emphasis added.)
See also Davis v. Williams, Fla.App. 1970, 239 So.2d 593, 594, where Judge Wigginton said:
"In our review we found and so held in Beta Eta House Corporation v. Gregory that by its decision in Shingleton v. Bussey [Fla. 223 So.2d 713] the Supreme Court intended to and did extend the doctrine permitting the joinder of liability insurance companies in actions against their insureds to all types of liability insurance including, but not limited to, motor vehicle liability insurance."
Therefore, I believe this question must be answered in the affirmative and if this case is to proceed to trial on its merits the insurance company is a proper party defendant.
I would reverse and remand for a trial on the complaint.