379 So.2d 352 (1979)
Ruth RAISEN, Petitioner,
v.
Philip RAISEN and Insurance Company of North America, Respondents.
No. 54838.
Supreme Court of Florida.
December 20, 1979.
Rehearing Denied February 21, 1980.
*353 Lawrence B. Friedman of Friedman & Robbins, North Miami Beach, for petitioner.
Joseph S. Kashi of Grimmett, Scherer & James, Fort Lauderdale, for respondents.
Larry Klein, West Palm Beach, for The Academy of Florida Trial Lawyers, amicus curiae.
ALDERMAN, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Fourth District, in Raisen v. Raisen, 370 So.2d 1148 (Fla. 4th DCA 1978). The district court has certified the following question for our consideration:
Does the doctrine of interspousal immunity preclude a tort action between husband and wife in all cases or will such an action lie if it is alleged and proven that none of the traditional reasons supporting interspousal immunity are applicable?
Material to the disposition of this cause is the broader question posed by the parties of whether this court should abrogate the doctrine of interspousal immunity in Florida. We conclude that valid policy reasons justifying the retention of the doctrine still exist.
Mrs. Raisen sued her husband and his insurer for damages arising out of his operation of an automobile in an allegedly negligent manner so as to cause her injury. She alleged that this suit would not disturb the domestic peace of her home and marriage and that she and her husband have not conspired to promote a fraudulent or collusive lawsuit. The trial court dismissed the complaint on the basis of interspousal immunity and entered judgment for Mr. Raisen and his insurer. The district court affirmed.
Mrs. Raisen urges that we abrogate the common law doctrine of interspousal immunity because the reasons for this rule have ceased to exist. In response, Mr. Raisen and his insurance carrier argue that the underlying justifications for this doctrine retain their vitality. They contend that with widespread insurance coverage, the probability of collusion and fraud is increased and that, unquestionably, an adversary tort contest between spouses will have an upsetting effect on domestic tranquility.
Originally a part of the common law of England, interspousal tort immunity was adopted into the law of Florida in 1829 by the enactment of what is now section 2.01, Florida Statutes (1977).[1]Corren v. Corren, 47 So.2d 774 (Fla. 1950). As a general rule, that part of the common law codified by section 2.01 should be changed through legislative enactment and not by judicial decision. *354 Only in very few instances and with great hesitation has this Court modified or abrogated any part of the common law enacted by section 2.01, and then only where there was a compelling need for change and the reason for the law no longer existed. E.g., Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).
In Corren v. Corren, we considered the changes that had occurred since 1829 and concluded that the legislature had not intended by any of its enactments to abrogate interspousal tort immunity. At that time, we admonished the legislature that it would be assuming a grave responsibility if it were, by legislative enactment, to allow each spouse to treat the other as a stranger so far as legal rights are concerned, and we advised that if it should do so, the language proclaiming this revolutionary change should be positive and unambiguous. 47 So.2d at 776. Since our decision in Corren, the legislature has not spoken in positive and unambiguous language to abrogate interspousal tort immunity.
Convincing arguments for the continued validity of this law are found in various decisions of this Court over the last thirty years. In Corren, we rejected the argument that the Married Women's Property Act destroyed the unity of marriage and explained:
[T]he so-called emancipation act did not so affect the marriage relationship that the husband and wife were thenceforward permitted to go their separate ways, but instead were still mates residing in a common home, each making in his own way a contribution to the marriage venture.
As we have already commented, this fundamental relationship does not seem directly affected by the provisions of organic and statutory law with reference to the woman's dominion over her own property, and we feel that we would have to resort to the illogic to hold that there can be found in any of them the implication even that she might sue her spouse for injuries resulting from the negligent operation of his automobile.
47 So.2d at 775. Additionally, referring to the marital discord that could result from an embittering and distressing interspousal tort action, we said:
When one ponders the effect upon the marriage relationship were each spouse free to sue the other for every real or fancied wrong springing even from pique or inconsequential domestic squabbles, one can imagine what the havoc would be to the tranquility of the home. Certainly the success of the sacred institution of marriage must depend in large degree upon harmony between the spouses, and the relationship could easily be disrupted and the lives of offspring blighted if bickerings blossomed into law suits and conjugal disputes into vexatious, if not expensive, litigation.
47 So.2d at 776.
Subsequently, in Bencomo v. Bencomo, 200 So.2d 171 (Fla. 1967), we acknowledged the continued validity and soundness of the doctrine, reiterated the justification for its existence, and reaffirmed that, in the absence of a constitutional or statutory provision changing the common law, a wife could not maintain an action against her husband for a personal tort. In Gaston v. Pittman, 224 So.2d 326 (Fla. 1969), we recognized the validity of the public policy arguments supporting the doctrine: that interspousal tort actions disturb domestic tranquility; cause marital discord and divorce; cause fictitious, collusive, and fraudulent claims; cause a rise in liability insurance; and promote trivial actions. Again, in Orefice v. Albert, 237 So.2d 142 (Fla. 1970), we acknowledged as the established policy of this state that suits will not be allowed among members of a family unit for tort, and we said "[t]he purpose of this policy is to protect family harmony and resources." 237 So.2d at 145. Our recent decision in Shor v. Paoli, 353 So.2d 825 (Fla. 1977), although holding that interspousal tort immunity did not control over the Uniform Contribution Among Joint Tortfeasor's Act, did not affect the continued vitality of the doctrine. The continuing validity of this doctrine has also been recognized by a number of recent *355 decisions of the district courts of appeal. Vinci v. Gensler, 269 So.2d 20 (Fla. 2d DCA 1972); Mims v. Mims, 305 So.2d 787 (Fla. 4th DCA 1974); Heaton v. Heaton, 304 So.2d 516 (Fla. 4th DCA 1975); Blanton v. Blanton, 354 So.2d 430 (Fla. 4th DCA 1978); Horton v. Unigard Insurance Co., 355 So.2d 154 (Fla. 4th DCA 1978), cert. dismissed, 373 So.2d 459 (Fla. 1979).
There is a reciprocal and often antagonistic relationship between promotion of peace and harmony in the marital relationship and avoidance of fraudulent or collusive claims. A truly adversary tort lawsuit between husband and wife, by its very nature, would have an upsetting and embittering effect upon domestic tranquility. In such cases, there is little likelihood of fraud and collusion, but there is a great probability that the marriage relationship will be adversely affected. On the other hand, if the lawsuit is not adversary and there is no real conflict of interest between the spouses, the peace and harmony of the marriage is not threatened, but there is a great probability of fraudulent or collusive claims. This is particularly true where the defendant spouse is insured and both spouses will benefit if the plaintiff spouse wins the lawsuit and enforces the claim against the insurance company. Under such circumstances, it is unrealistic to think that the defendant spouse will do all within his or her power to defeat the claim of the plaintiff spouse. We expect too much of human nature if we believe that a husband and wife who sleep in the same bed, eat at the same table, and spend money from the same purse can be truly adversary to each other in a lawsuit when any judgment obtained by the plaintiff spouse will be paid by an insurance company and will ultimately benefit both spouses.
Adversary tort lawsuits between spouses have an upsetting and embittering effect upon domestic tranquility and the marital relationship. But non-adversary lawsuits that do not disturb the peace and harmony of the marriage encourage fraudulent and collusive claims, particularly where a third-party insurance company must pay any judgment awarded. Florida's solution to this dilemma since 1829 has been interspousal tort immunity. This is still a viable solution. There have been many changes in Florida since 1829, but the policy reasons justifying interspousal tort immunity still exist.
Accordingly, we hold that the common law doctrine of interspousal tort immunity is still viable in Florida and that it precludes a tort action between husband and wife in all cases. The decision of the district court affirming the trial court's dismissal of the complaint is therefore approved.
It is so ordered.
BOYD, OVERTON and McDONALD, JJ., concur.
McDONALD, J., concurs specially with an opinion.
ENGLAND, C.J., and ADKINS and SUNDBERG, JJ., dissent with an opinion.
McDONALD, Justice, specially concurring.
I concur in the conclusion that this Court should not abolish the doctrine of interspousal immunity. I am not greatly concerned with the specter of fraudulent and collusive claims against insurance companies, since I feel that our judicial system could ferret those out. I am much more concerned by any intrusion which may adversely affect the marriage relationship. Litigation between spouses would be such an intrusion.
It has been suggested that if the doctrine of interspousal immunity is retained, the application thereof should be relaxed to allow an action for tort when the tortious conduct is covered by liability insurance. The real party in interest, it is urged, is not the spouse but the insurance carrier. Reasonable men may agree that this is a viable alternative  but I agree that should this distinction be made, it should be done by the legislature rather than this Court.
*356 ENGLAND, Chief Justice, and ADKINS and SUNDBERG, Justices, dissenting.
We dissent.
At least twenty-eight jurisdictions have recognized the need to make a change in permitting one spouse to maintain an action against the other. Alabama, Bennett v. Bennett, 224 Ala. 335, 140 So. 378 (1932); Bonner v. Williams, 370 F.2d 301 (5th Cir.1966); Alaska, Armstrong v. Armstrong, 441 P.2d 699 (Alaska 1968); Arkansas, Leach v. Leach, 227 Ark. 599, 300 S.W.2d 15 (1957); California, Klein v. Klein, 58 Cal.2d 692, 26 Cal. Rptr. 102, 376 P.2d 70 (1962); Colorado, Rains v. Rains, 97 Colo. 19, 46 P.2d 740 (1935); McSwain v. United States, 291 F. Supp. 386 (E.D.Pa. 1968) (applying Colorado law); Connecticut, Menczer v. Menczer, 160 Conn. 563, 280 A.2d 875 (1971); Idaho, Rogers v. Yellowstone Park Co., 97 Idaho 14, 539 P.2d 566 (1974); Indiana, Brooks v. Robinson, 259 Ind. 16, 284 N.E.2d 794 (1972); Kentucky, Arnett v. Thompson, 433 S.W.2d 109 (Ky. 1968); Layne v. Layne, 433 S.W.2d 116 (Ky. 1968); Massachusetts, Lewis v. Lewis, 370 Mass. 619, 351 N.E.2d 526 (1971); Michigan, Hosko v. Hosko, 385 Mich. 39, 187 N.W.2d 236 (1971); Minnesota, Beaudette v. Frana, 285 Minn. 366, 173 N.W.2d 416 (1969); Nevada, Rupert v. Stienne, 90 Nev. 397, 528 P.2d 1013 (1974); New Hampshire, Thompson v. Thompson, 105 N.H. 86, 193 A.2d 439 (1963); Schneider v. Schneider, 110 N.H. 70, 260 A.2d 97 (1969); Taylor v. Bullock, 111 N.H. 214, 279 A.2d 585 (1971); New Jersey, Immer v. Risko, 56 N.J. 482, 267 A.2d 481 (1970); Merenoff v. Merenoff, 76 N.J. 535, 388 A.2d 951 (1978); New Mexico, Maestas v. Overton, 87 N.M. 213, 531 P.2d 947 (1975) (intentional tort); New York, Jacobs v. United States Fidelity & Guaranty Co., 2 Misc.2d 428, 152 N.Y.S.2d 128 (Sup.Ct. 1956); Keller v. Greyhound Corp., 41 Misc.2d 255, 244 N.Y.S.2d 882 (Sup.Ct. 1963); North Carolina, La Chance v. Service Trucking Co., 215 F. Supp. 162 (D.Md. 1963) (applying North Carolina Law); North Dakota, Fitzmaurice v. Fitzmaurice, 62 N.D. 191, 242 N.W. 526 (1932); Oklahoma, Courtney v. Courtney, 184 Okla. 395, 87 P.2d 660 (1938); Rhode Island, Digby v. Digby, 388 A.2d 1 (R.I. 1978); South Carolina, Oshiek v. Oshiek, 244 S.C. 249, 136 S.E.2d 303 (1964); Algie v. Algie, 261 S.C. 103, 198 S.E.2d 529 (1973); South Dakota, Scotvold v. Scotvold, 68 S.D. 53, 298 N.W. 266 (1941); Virginia, Surratt v. Thompson, 212 Va. 191, 183 S.E.2d 200 (1971); Vermont, Richard v. Richard, 131 Vt. 98, 300 A.2d 637 (1973); Washington, Freehe v. Freehe, 81 Wash.2d 183, 500 P.2d 771 (1972); West Virginia, Coffindaffer v. Coffindaffer, 244 S.E.2d 338 (W. Va. 1978); and Wisconsin, Haumschild v. Continental Casualty Co., 7 Wis.2d 1301, 95 N.W.2d 814 (1959).
These decisions recognize that the reasons for the common law rule no longer exist. Chief among the reasons traditionally assigned as justification for the doctrine of interspousal immunity are: (1) the legal unity of the husband and wife recognized at common law; (2) the promotion of peace and harmony in the home; and (3) the avoidance of fraudulent or collusive claims. Respondents argue that these justifications are still valid. They say, in fact, that with widespread insurance coverage, the fear of collusion and fraud is intensified. Respondents also correctly point out that the doctrine of interspousal immunity is well established in this state and has been upheld in our recent holdings. See Orefice v. Albert, 237 So.2d 142 (Fla. 1970); Bencomo v. Bencomo, 200 So.2d 171 (Fla. 1967).

I. UNITY
Petitioner first urges that the common law unity concept which prohibited suits between spouses is no longer viable. We agree. Since 1943, with the passage of the Married Women's Property Act, now chapter 708, Florida Statutes (1977), a married woman in Florida has been empowered to manage and control her separate property and to enter into agreements and contracts with her husband.[2] She may also enforce *357 her contract and property claims by suing her husband. Dodson v. National Title Insurance Co., 159 Fla. 371, 31 So.2d 402 (1947). The legal unity concept prohibiting suits between spouses was seriously eroded by the passage of this statute permitting interspousal suits in a wide range of cases. With the passage of chapter 708, and in view of the expanded legal status of women, the common law unity concept is no longer a valid justification for the doctrine of interspousal tort immunity. By rejecting the common law unity concept we do not disparage the spiritual and emotional unity which has been held to exist by virtue of the marriage bond. As noted by the Washington Supreme Court in a case abrogating the doctrine of interspousal immunity in that state:
The "supposed unity" of husband and wife, which serves as the traditional basis of interspousal disability, is not a reference to the common nature or loving oneness achieved in a marriage of two free individuals. Rather, this traditional premise had reference to a situation, coming on from antiquity, in which a woman's marriage for most purposes rendered her a chattel of her husband.
Freehe v. Freehe, 81 Wash.2d 183, 500 P.2d 771, 773 (1972). It is the common law concept of legal unity which rendered the wife a chattel of her husband, which can no longer operate to preclude one spouse from suing the other for tortious injury.

II. PEACE AND HARMONY
We also agree with petitioner that domestic tranquility is no longer realistically served by the existence of the doctrine. As we initially noted, in this state spouses are free to sue each other for breach of contractual obligations and to protect separate property rights, but may not bring interspousal actions for tortious injury. Bencomo v. Bencomo; Dodson v. National Title Insurance Co.; sections 708.08 and 708.09, Florida Statutes, (1977). The inconsistency in this approach was identified in a dissent to an opinion of the United States Supreme Court construing a District of Columbia women's property act to permit interspousal actions in tort only for the recovery of property. Justice Harlan dissented, noting that such a construction would allow:
[A] married woman to sue her husband separately, in tort, for the recovery of her property, but deny . .. her the right or privilege to sue him separately, in tort, for damages arising from his brutal assaults upon her person.
Thompson v. Thompson, 218 U.S. 611, 623, 31 S.Ct. 111, 114, 54 L.Ed. 1180 (1910). It is not logical to permit one and not the other. *358 If marital tranquility is preserved when lawsuits are permitted between spouses over property and contract rights, we see no reason to conclude that tort actions between spouses should destroy it. We find support for this view in Dean Prosser's criticism of the doctrine. He writes:
The chief reason relied upon by all these courts, however, is that personal tort actions between husband and wife would disrupt and destroy the peace and harmony of the home, which is against the policy of the law. This is on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy  and this even though she has left him or divorced him for that very ground, and although the same courts refuse to find any disruption of domestic tranquility if she sues him for a tort to her property, or brings a criminal prosecution against him. If this reasoning appeals to the reader, let him by all means adopt it.
Prosser, Law of Torts, section 122, page 863 (4th Ed. 1971). We agree, and conclude that the doctrine of interspousal tort immunity cannot be validly justified on grounds that it serves to maintain marital peace and harmony.

III. FRAUD
A third argument often urged in support of the doctrine is that to permit suits between spouses would encourage fraudulent claims against insurers. Recognizing that the possibility of fraud exists in any lawsuit, we reject the contention as a valid justification for denying one spouse compensation for injuries negligently inflicted by the other. Support for our position is found in the responses of other states to the same argument.
In rejecting the common law immunity rule, the Supreme Court of California noted:
It would be a sad commentary on the law if we were to admit that the judicial processes are so ineffective that we must deny relief to a person otherwise entitled simply because in some future case a litigant may be guilty of fraud or collusion. Once that concept were accepted, then all causes of action should be abolished. Our legal system is not that ineffectual.
Klein v. Klein, 58 Cal.2d 692, 26 Cal. Rptr. 102, 376 P.2d 70 (1962).
In a decision abolishing the common law interspousal tort immunity in Indiana, the Supreme Court of that state first noted that, "[t]he possibility of fraud and collusion exists in all litigation." Brooks v. Robinson, 284 N.E.2d 794, 797 (Ind. 1972). The court continued:
However, we are not convinced that the danger is so great when the plaintiff and defendant are also husband and wife that judicial relief should be summarily denied. Furthermore, it should not be overlooked that the testimony of both parties will be extremely vulnerable to impeachment at trial on the grounds of bias, interest and prejudice. The trial court's responsibility, indeed, its duty, to properly instruct the jury on the credibility of witnesses and the rules governing the weight of evidence will remain unchanged, and, as was stated in United States v. Freeman (2d Cir.1966), 357 F.2d 606, 620, "... it cannot be presumed that juries will check their common sense at the courtroom door."
Id., at 797.
The Washington Supreme Court rejected the same argument with this reasoning:
[T]he fact that there may be greater opportunity for fraud or collusion in one class of cases than another does not warrant courts of law in closing the door to all cases of that class... . Courts will not immunize tort feasors from liability in a whole class of cases because of the possibility of fraud, but will depend upon the legislature to deal with the problem as a question of public policy.
*359 Freehe v. Freehe, 500 P.2d at 775 (quoting Borst v. Borst, 41 Wash.2d 642, 251 P.2d 149, 155 (1952)).
Judge Liles, dissenting in Vinci v. Gensler, 269 So.2d 20 (Fla.2d DCA 1972), summarizes our response to the concern over fraud in interspousal tort litigation. He writes:
Some cases, in addition to maintaining family unity and harmony, rely on the danger of fraud and collusion. This, I think, denies the fact that judges are able to detect collusion and fraud when they see it. It also overlooks the fact that lawyers are officers of the court and practice pursuant to an oath against bringing such suits and a canon of ethics which prohibits such action.
.....
... I further believe that the courts are capable of distinguishing between a fraudulent raid on a treasury of an insurance company and legitimate claims of a wife or child where the benefit of liability protection has been purchased by the husband and father. I cannot believe that the father purchased this insurance policy to protect all other wives and children but not his own.
Id. at 21-22.
These arguments persuade us that the fear of fraud and collusion in interspousal suits for tort damages is not well founded. We reject that consideration as a legitimate justification for preserving the interspousal immunity doctrine.
Having concluded that the traditional reasons for the doctrine are not sufficiently persuasive to justify its continued operation, we would join the many other states that have totally or partially abrogated the doctrine.
In our opinion Bencomo v. Bencomo, 200 So.2d 171 (Fla. 1967) and Corren v. Corren, 47 So.2d 774 (Fla. 1950) should be overruled and the doctrine of interspousal tort immunity should be abrogated so as to permit a married person to sue his or her spouse for any torts committed by the marital partner.
NOTES
[1] Section 2.01, Florida Statutes (1977), provides:

Common law and certain statutes declared in force.  The common and statute laws of England which are of a general and not a local nature, with the exception hereinafter mentioned, down to the fourth day of July, 1776, are declared to be of force in this state; provided, the said statutes and common law be not inconsistent with the constitution and laws of the United States and the acts of the legislature of this state.
[2] § 708.08, Fla. Stat. (1977) provides:

(1) Every married woman is empowered to take charge of and manage and control her separate property, to contract and to be contracted with, to sue and be sued, to sell, convey, transfer, mortgage, use, and pledge her real and personal property and to make, execute, and deliver instruments of every character without the joinder or consent of her husband in all respects as fully as if she were unmarried. Every married woman has and may exercise all rights and powers with respect to her separate property, income, and earnings and may enter into, obligate herself to perform, and enforce contracts or undertakings to the same extent and in like manner as if she were unmarried and without the joinder or consent of her husband. Any claim or judgment against a married woman shall not be a claim or lien against her inchoate right of dower in her husband's separate property. All conveyances, contracts, transfers, or mortgages of real property or any interest in it, executed by a married woman without the joinder of her husband after the effective date of the 1968 Constitution of Florida, are as valid and effective as though the husband had joined.
(2) Any married woman having a right of dower in real property may relinquish it by joining in a conveyance or mortgage of the property or by a separate instrument without the joinder of her husband, executed in the same manner as conveyances.
§ 708.09, Fla. Stat. (1977), provides:
Every married woman may enter into agreements and contracts with her husband, may become the partner of her husband or others, may give a power of attorney to her husband, and may execute powers conferred upon her by her husband, including the power to execute and acknowledge all instruments, including relinquishments of dower, conveying, transferring, or encumbering property, or any interest in it, owned by her, or by herself and her husband as tenants by the entirety, or by her husband. All powers of attorney heretofore executed by a wife to her husband and vice versa, and the execution of all documents executed thereunder, are hereby validated and confirmed.