395 So.2d 586 (1981)
Douglas Perry ARD, Etc., Appellant,
v.
Sylvia Elaine ARD, Etc. et al., Appellees.
No. UU-374.
District Court of Appeal of Florida, First District.
March 18, 1981.
*587 John E. Venn, Jr. of Smith, Sauer & Venn, Pensacola, for appellant.
Miles Davis, Edward P. Nickinson, III, Pensacola, and Richard M. Denney, Fort Walton Beach, for appellees.
WENTWORTH, Judge.
The appellant Ard, as guardian for Benji Dwain Clary, a minor, appeals a summary judgment holding the child's negligence action to be barred by the immunity doctrine pertaining to suits between parent and child. After oral argument on the appeal, we reverse but certify the cause to the Supreme Court as one involving both a question of great public importance and involving a conflict with decisions of other district courts in Florida. See Horton v. Unigard Insurance Co., 355 So.2d 154 (Fla. 4th DCA 1978), cert. dismissed, 373 So.2d 459 (Fla. 1979); Webb v. Allstate Insurance Co., 258 So.2d 840 (Fla. 3d DCA 1972); Rickard v. Rickard, 203 So.2d 7 (Fla. 2d DCA 1967).
The complaint filed in this case against Sylvia Elaine Clary Ard and her two liability insurance carriers alleged that in 1975 she negligently unloaded her child Benji from a motor vehicle, placing him in a position of peril, and "[a]s a result Benji was injured when such motor vehicle ran over him." Amendments were proffered alleging [1] "[t]his action will not disturb or disrupt the parent-child relationship... . [2] to deny benefits under an available insurance policy ... will itself have an adverse effect on the family relationship... . [3] the parent and the child have not colluded or conspired to promote a fraudulent or collusive lawsuit [and 4] there are witnesses available other than the parent and child who can substantiate Plaintiff's claim that Defendant Ard was negligent." The motion to amend was denied because of the court's "opinion that the allegations set forth in the proposed amendment would not materially affect its decision" on the motion for summary judgment.
The parties agree that the issue of parental immunity is one of first impression in this district, but disagree on the relationship between this issue and that of spousal immunity, recently reaffirmed in Florida. See Raisen v. Raisen, 379 So.2d 352 (Fla. 1980). Because our Supreme Court has not in any case to date been required to adjudicate and apply the parental immunity doctrine (but has instead only acknowledged the rule by dictum in Orefice v. Albert, 237 So.2d 142 (Fla. 1970)[1], and Raisen, supra), we conclude that the requirement for following its precedent (Hoffman v. Jones, 280 So.2d 431 (Fla. 1973)) does not relieve this court of the obligation to consider and act on the merits of this issue on which there exists no such controlling precedent. The Court has often acknowledged that principle:
It is a maxim not to be disregarded that general expressions in every opinion... . [which] go beyond the case ... may be respected, but ought not to control the judgment in a subsequent suit where the very point is presented for decision... . Therefore, in applying cases which have been decided, what may have been said in an opinion ... should not be extended to cases where the facts are essentially different. When this rule is followed, much of the misapprehension and uncertainty that often arise as to the effect of a decision will be practically avoided. Ex *588 parte Amos, 93 Fla. 5, 112 So. 289, at 294-5 (1927).
With respect to the conflicting decisions of other Florida courts, supra, their conclusions equating parental and spousal immunity appear to have been reached without full consideration of the common law origin of the immunity doctrine as to spouses but not as to parents and children. The distinction is stated as follows:
The common law had no similar concept of unity of legal identity in the case of a parent and his minor child. Although the parent was given custody of the child, the latter remained a separate legal person, entitled to the benefits of his own property and to the enforcement of his own choses in action, including those in tort, and was liable in turn as an individual for his own torts. Prosser, Law of Torts § 122, p. 864 (4th ed. 1971).
In the present case, therefore, we may not avoid judicial responsibility by invoking the general rule of legislative prerogative applied by the Court in Raisen to continue spousal immunity:
Originally a part of the common law of England, interspousal tort immunity was adopted into the law of Florida in 1829 by the enactment of what is now section 2.01, Florida Statutes (1977). Corren v. Corren, 47 So.2d 774 (Fla. 1950). As a general rule, that part of the common law codified by section 2.01 should be changed through legislative enactment and not by judicial decision. Only in very few instances and with great hesitation has this Court modified or abrogated any part of the common law enacted by section 2.01, and then only where there was a compelling need for change and the reason for the law no longer existed. Raisen, supra, at 353-4.
That principle of legislative deference was forthrightly rejected in an earlier case with respect to a municipal immunity rule which was found not to be rooted in common law. Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957). The Court noted "our constitutional guarantee that the courts shall always be open to redress wrongs and ... our sense of justice that there shall be a remedy for every wrong committed... ." and held "the courts should be alive to the demands of justice. We can see no necessity for insisting on legislative action in a matter which the courts themselves originated." Hargrove, supra, at 132.
The law and rationale for and against parental immunity has been exhaustively treated by courts and scholars in recent years. Annot., Negligent Parent-Child Injury-Liability, 41 A.L.R.3rd 904; 4 Nova Law Journal 25 (1980), "Time to Abolish Parent-Child Tort Immunity: A Call to Repudiate Mississippi's Gift to the American Family."; 47 Univ.Colo.L.Rev. 795 (1976), "The `Reasonable Parent' Standard: An Alternative to Parent-Child Tort Immunity." As a predicate for our conclusion against adopting the parental immunity rule for this district at this late date, we point to the summation of the opinion in Quest v. Joseph, 392 So.2d 256 (Fla. 3rd DCA), by which the District Court of Appeal, Third District (which previously recognized such immunity), permitted a statutory contribution action by a third party against a parent jointly liable: "It must be acknowledged that the result makes Florida the worst of all possible jurisdictions for an injured child. He may not sue his parent directly; and any action against a negligent third-party may be inhibited or compromised by the fact that the third-party defendant can." Quest, supra, at 262, fn. 11. See also Mantilla v. Hassanien, 396 So.2d 1135 (Fla. 3rd DCA).
A recent opinion of the Kansas Supreme Court contains a comprehensive treatment of the history, development and current arguments for and against the doctrine. Nocktonick v. Nocktonick, 227 Kan. 758, 611 P.2d 135 (Kan. 1980). We conclude that court's opinion adequately states our view:
In 1977, the American Law Institute adopted § 895G of the Restatement (Second) of Torts (1979), which rejected the immunity from liability in tort between parent and child. In lieu thereof, it recognized privileges arising out of the *589 parent-child relationship. It states as follows:
`§ 895G. Parent and Child.
(1) A parent or child is not immune from tort liability to the other solely by reason of that relationship.
(2) Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious.'
In the comment to § 895G, the Restatement... . states in part as follows:
`Parental discretion is involved, and to say that the standard of a reasonable prudent parent is applied should be to recognize the existence of that discretion and thus to require that the conduct be palpably unreasonable in order to impose liability.
.....
... in the case of a negligent tort there is an analogy to the defense of assumption of risk. For activities central to that relationship, particularly within the home itself, there is some relaxation of the stricter standard of conduct applied in dealing with third persons... .
These problems are comparatively new to the courts as a result of the recent abrogation of immunity, and the courts have not yet worked out a full analysis of the proper legal treatment. The reasons put forward for a general tort immunity still carry weight and some courts conclude that there should be a remaining immunity for certain types of activities. The analysis here, however, seems more appropriate than the granting of a categoric immunity for these types of activities, regardless of the blatancy of the negligence or the wilfulness of the conduct.' We believe that the authorities which favor abrogation of the parental immunity doctrine state the proper approach in light of modern conditions and conceptions of public policy. We see no good reason why children should not enjoy the same right to protection and to legal redress for wrongs done them as others enjoy. We question the view that a regard for family harmony and tranquility necessitates denial of tort recovery to a child injured in an automobile accident. We have concluded that, under the factual circumstances of this case, an unemancipated minor child may recover damages in an action brought against a parent for personal injuries caused by the negligence of the parent in the operation of a motor vehicle. This conclusion is consistent with a growing list of states which, in recent years, have adopted this position. States which have abolished parental immunity in all cases or in automobile accident cases include:
Alaska  Hebel v. Hebel, 435 P.2d 8 (Alaska 1967);
Arizona  Streenz v. Streenz, 106 Ariz. 86, 471 P.2d 282 (1970);
California  Gibson v. Gibson, 3 Cal.3d 914, 92 Cal. Rptr. 288, 479 P.2d 648 (1971);
Connecticut  G.S. 1979 Supp. 52-572c. Hawaii  Tamashiro v. De Gama, 51 Haw. 74, 450 P.2d 998 (1969);

Petersen v. City & County, 51 Haw. 484, 462 P.2d 1007 (1969);
Illinois  Schenk v. Schenk, 100 Ill. App.2d 199, 241 N.E.2d 12 (1968);
Kentucky  Rigdon v. Rigdon, 465 S.W.2d 921 (Ky. 1971);
Massachusetts  Sorensen v. Sorensen, 369 Mass. 250, 339 N.E.2d 907 (1975);
Michigan  Plumley v. Klein, 388 Mich. 1, 199 N.W.2d 169 (1972);
Minnesota  Silesky v. Kelman, 281 Minn. 431, 438-439, 161 N.W.2d 631 (1968);
New Hampshire  Briere v. Briere, 107 N.H. 432, 224 A.2d 588 (1966);
New Jersey  France v. A.P.A. Transport Corp., 56 N.J. 500, 267 A.2d 490 (1970);
New York  Gelbman v. Gelbman, 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969);
Nevada  Rupert v. Stienne, 90 Nev. 397, 528 P.2d 1013 (1974);
North Carolina  G.S. 1979 Supp. 1-539.21;

*590 North Dakota  Nuelle v. Wells, 154 N.W.2d 364 (N.D. 1967);
Pennsylvania  Falco v. Pados, 444 Pa. 372, 282 A.2d 351 (1971);
Virginia  Smith v. Kauffman, 212 Va. 181, 183 S.E.2d 190 (1971);
West Virginia  Lee v. Comer, 224 S.E.2d 721 (W. Va. 1976).
It should be noted that the states listed above have followed for many years the rule which we have adopted today. Yet there apparently has been no significant disruption in family relationships as grimly predicted by the prophets of doom... .
We believe that the argument that parental immunity is necessary to preserve the tranquility and harmony of domestic life misconceives the facts of domestic life. The primary disruption to harmonious family relationships is not the lawsuit brought for damages after the injury but the injury itself, ... .
We recognize a practical problem is that of possible collusion between parent and child aimed at securing an unjustified recovery from an insurance company. But the possibility of collusion exists to a certain extent in any case. Every day we depend on juries and trial judges to sift evidence in order to determine the facts and arrive at proper verdicts. Experience has shown that the courts are quite adequate for this task. In litigation between parent and child, judges and juries would naturally be mindful of the relationship and would be even more on the alert for improper conduct... .
Our holding is limited to the factual circumstances of the case now before us  an automobile tort action brought by an unemancipated minor child against a parent. Allowance of such an action does not undermine parental authority and discipline nor does it threaten to substitute judicial discretion for parental discretion in the care and rearing of minor children. We recognize that there may be parental exercises of discretion and authority which should be provided special protection in the court of law. Here we merely remove any barrier to the enforcement of liability between parent and child in an automobile accident case brought by an unemancipated minor against a parent. When confronted with other cases involving claimed parental immunity, we will at that time determine to what extent parental immunity or privilege should be recognized under the particular circumstances of the case then before us. Nocktonick, supra, 611 P.2d at 139-42.
If a statement of more definitive standards should be deemed necessary to prevent useless litigation in this area, we agree with the concurring opinion in Raisen, supra, that such prescriptive distinctions are indeed the proper prerogative of the legislature.
The judgment appealed is accordingly reversed. The question is certified to the Supreme Court pursuant to Fla.R.App.P. 9.030(a)(2)(A)(v) and (vi): WHETHER AN UNEMANCIPATED MINOR CHILD MAY MAINTAIN A NEGLIGENCE ACTION AGAINST HIS PARENT.
ERVIN and SHAW, JJ., concur.
NOTES
[1] In fact, Orefice involved an action by the minor's estate against a third person who owned the airplane jointly with the deceased minor's father. The cause of action arose out of an airplane crash that resulted from the negligence of the father. Instead of denying the right to bring such an action, the Supreme Court held that the minor's estate could bring suit against a co-owner of a dangerous instrumentality based upon the negligence of the minor's parent.