Linda FUQUAY and Charles
Fuquay, Plaintiffs,

v.

GENERAL MOTORS CORPORATION
and Stant Manufacturing Company,
Inc., Defendants.

No. 77–614–Civ–J–B.

United States District Court,
M. D. Florida,
Jacksonville Division.

July 16, 1981.

David R. Lewis, Jacksonville, Fla., for plaintiffs.

Ronald L. Palmer, Jacksonville, Fla., for General Motors.

Howard C. Coker, Jacksonville, Fla., for Stant Mfg.

William S. Burns, Jr., Jacksonville, Fla., for counterclaim defendant Charles Fuquay.

## ORDER GRANTING MOTION
## TO DISMISS

SUSAN H. BLACK, District Judge.

This cause is before the Court on counterclaim-defendant Charles Fuquay's Motion to Dismiss, filed herein on June 22, 1981.

This case is presently set for trial before the undersigned on the personal injury

claim of Linda and Charles Fuquay for injuries sustained in 1975 by plaintiff Linda Fuquay. According to the allegations of the Complaint, plaintiff's then-husband Charles Fuquay removed the radiator cap from the family van and the radiator exploded, causing burns over a portion of Linda's body. The Fuquays sued General Motors, manufacturers of the van, and Stant Manufacturing Company, makers of the radiator cap, under negligence and breach of warranty theories of liability. Charles Fuquay sued additionally for loss of consortium.

In May, 1980, both Stant and General Motors filed counterclaims against plaintiff Charles Fuquay, alleging that his negligence in removing the radiator cap from an overheated vehicle was the sole proximate cause of Linda Fuquay's injuries. On June 22, 1981, Stant entered into a settlement with Linda Fuquay. On June 25, the Court entered Orders of Dismissal as to both plaintiffs' claims against Stant and Stant's counterclaim against Charles Fuquay. On June 22, Charles Fuquay's insurer paid Linda Fuquay the maximum sum ($15,000) payable under the terms of his personal liability insurance in consideration for a complete release to him of any liability to her in connection with the 1975 accident. Pursuant to 1979 Fla.Stat. § 768.31(5)(b), the Uniform Contribution Among Tortfeasors Act, Charles Fuquay now moves to dismiss General Motors' counterclaim on the grounds that the settlement and release executed between him and his former wife discharges him from liability to General Motors for contribution on any judgment in favor of Linda Fuquay on the principal claim. The Court held an evidentiary hearing on June 26, 1981.

In pertinent part, Fla.Stat. § 768.31 reads as follows:

(5) RELEASE OR COVENANT NOT TO SUE.—When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,

(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

Defendant now argues two grounds in opposition to counterclaim defendant's Motion to Dismiss: first, that it was not within Charles Fuquay's power to extinguish its counterclaim for contribution, since the purported release from Linda to Charles is superfluous given Florida's continued adherence to the doctrine of interspousal immunity; and second, that even if he could execute such a release with binding effect on General Motors' contribution claim, the instant settlement was not made in good faith as required by the statute.

I. Settlement Between Spouses

█ As to the first ground, the parties agree that Florida case law has overridden the interspousal immunity doctrine to the extent of allowing a joint tortfeasor to sue a joint tortfeasor spouse of the injured plaintiff on a claim for contribution, even though the injured spouse could not have sued the tortfeasor spouse directly. *Shor v. Paoli*, 353 So.2d 825 (Fla.1977). Defendant argues, however, that the continued vitality of the interspousal immunity doctrine in Florida precludes Linda Fuquay from giving a binding release to Charles Fuquay. Since he could never be liable to her for a tort during coverture, the argument goes, any release given to him is of no legal effect and cannot bar General Motors' claim for contribution.

This is apparently a question of first impression under Florida Law.

█ Absent Florida case authority directly on point, the Court now holds that a joint tortfeasor may extinguish his liability for contribution pursuant to § 768.31(5) by set-

tling with his plaintiff spouse, even though the spouse could not have sued the settling tortfeasor directly.

*Shor v. Paoli* requires this result. *Shor* allowed a defendant to sue a tortfeasor spouse for contribution despite the supposed unity of the marital relationship long touted as a basis for barring direct interspousal law suits. *See Raisen v. Raisen*, 379 So.2d 352, 356–7 (Fla.1979) (England, C. J., dissenting), *cert. denied*, —— U.S. ——, 101 S.Ct. 240, 66 L.Ed.2d 111 (1980). The alternative was to allow a negligent spouse to avoid all liability, receive a windfall from an injured spouse's recovery, and force the non-spouse tortfeasor to bear the entire cost of the wrong. *Shor*, 353 So.2d at 826.

At the same time, the Florida cases continue to prohibit one spouse from suing another in the very situation where a non-spouse defendant can seek contribution from the negligent spouse. Said the majority in *Raisen*:

> Under such circumstances, it is unrealistic to think that the defendant spouse will do all within his or her power to defeat the claim of the plaintiff spouse. We expect too much of human nature if we believe that a husband and wife who sleep in the same bed, eat at the same table, and spend money from the same purse can be truly adversary to each other in a lawsuit when any judgment obtained by the plaintiff spouse will be paid by an insurance company and will ultimately benefit both spouses.

*Raisen*, 379 So.2d at 355. *See also, Blanton v. Blanton*, 354 So.2d 430, 431 (Fla. 4th DCA 1978); *Hill v. Hill*, 388 So.2d 625, 626 (Fla. 1st DCA 1980).

The creation of a right to sue in *Shor*, and the denial of such a right in *Raisen*, may be reconciled by the apparent desire of Florida courts to prevent unjust enrichment of a negligent spouse at a co-defendant's expense. In *Raisen*, spouses might collude to sue. In *Shor*, they profit indirectly by over-recovery. Both situations arise solely by virtue of interspousal immunity. The remedy created by *Shor* is to allow the Uniform Contribution Act to prevail.

Defendant relies primarily on *Withrow v. Woods*, 386 So.2d 607 (Fla. 5th DCA 1980). In *Withrow*, a minor plaintiff was injured in an automobile accident in a car driven by her mother. Defendant counterclaimed against the mother for contribution, but settled with the child and secured a release. The release did not affect the mother's potential liability to the child. The mother moved for summary judgment on the basis of 1979 Fla.Stat. § 768.31(2)(d), which provides that "[a] tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury ... is not extinguished by the settlement ...." The trial court granted summary judgment. The appellate court reversed. "In the light of the continued vitality of the family immunity doctrine, there was no need for appellants to extinguish the claim of Vicki Woods against her mother, because Vicki could not sue her mother for that tort, so a release would have been meaningless and superfluous." 386 So.2d at 609. Defendant argues that any settlement between Charles and Linda Fuquay of a nonexistent claim would likewise be "meaningless and superfluous" and should not bar General Motors' claim for contribution.

As Charles Fuquay points out, however, the section of § 768.31 under consideration in *Withrow* dealt with the means by which a contribution claim is continued, not discharged. The distinction is important. Section 768.31(2)(d) aims to make any claim for contribution against a joint tortfeasor await a final settlement of that defendant's liability for plaintiff's injury. Otherwise, uncertainty and possibly premature or vexatious litigation for contribution among co-defendants might ensue. The *Withrow* court merely held, in effect, that there was no uncertainty where a cause of action was barred by family immunity. If the cause of action could not arise, a settling defendant could proceed to seek contribution without the formality of securing a release for that non-existent claim. Only in this sense would a release between parties who could not sue one another directly be "meaningless and superfluous," 386 So.2d at 609.

*Withrow v. Woods* is thus entirely consistent with *Shor v. Paoli*, since both cases affirm the right of a joint tortfeasor to seek contribution from another joint tortfeasor whom the plaintiff could not have sued directly. Neither case, however, addressed the issue of whether a joint tortfeasor, whom plaintiff admittedly could not have sued directly, might nonetheless extinguish a liability for contribution by "settling" with plaintiff according to the terms of § 768.31(5).

■ Defendant's argument that there can be no contribution absent joint liability to plaintiff is unavailing. Contribution in general may be founded on the idea that joint tortfeasors share a common burden, as defendant argues. However, *Shor v. Paoli* reaffirms interspousal immunity. In so doing it recognizes that circumstances like those of the instant case give rise to no common liability to a spouse-plaintiff. Yet defendant moved to file its counterclaim against Charles Fuquay on the ground that he is a joint tortfeasor in light of *Shor. See* defendant's Memorandum for Motion for Leave to File Counterclaim, May 29, 1980. It cannot now argue that he is not a joint tortfeasor when he seeks to extinguish his potential liability for contribution. As Charles Fuquay pointed out to the Court, to hold otherwise would set him in a special class of contribution defendants, made liable only due to the *Shor v. Paoli* gloss on the Uniform Contribution Act, yet prevented from obtaining release under the same statute.

Looking to the facts of the instant case, neither collusion nor over-recovery bar settlement between Linda and Charles Fuquay. Although married at the time this suit began, the two are now divorced. This is not dispositive; but since each Fuquay is suing in his or her own right, subject to the separate defenses General Motors may raise, there is less concern that any judgment obtained "will ultimately benefit both spouses." 379 So.2d at 355. More importantly, Charles Fuquay's insurer paid the maximum sum provided by the terms of his policy to Linda. General Motors could re-cover no more than that amount from Charles in contribution, given his testimony (which the Court credits and General Motors does not seriously dispute) that he is otherwise without assets. Under the terms of the statute, General Motors will receive an offset for the amount paid in settlement. *See* § 768.31(5)(a). Finally, the amount paid in settlement by Charles to Linda represents satisfaction of an unliquidated liability for contribution. Should General Motors be found liable for Linda's injuries in an amount less than $15,000, Charles's insurer has thrown money away. In any event, settlement precludes Charles Fuquay from seeking contribution from General Motors, should it turn out the settlement exceeds his pro rata share of liability. § 768.31(2)(d). But the decision to settle is rational, even though recovery by contribution or offset might be identical, since Charles's insurer thereby saves the cost of defending the counterclaim at trial. The payment of a settlement on a contingent liability is a normal assessment of the risks and costs of litigation. The Court is of the opinion that this settlement should have binding effect under the statute.

## II. Good Faith

■ Given this analysis, the question of the good faith of the settlement between Charles and Linda Fuquay is secondary. Many of the same factors which convince the Court that the spouses *could* settle likewise show that they *did* settle in good faith. Defendant cites *Sobik's Sandwich Shops, Inc. v. Davis*, 371 So.2d 709 (Fla. 4th DCA 1979) for the proposition that plaintiff may not arbitrarily decide who bears the burden of the loss by manipulating the terms of settlements with co-defendants. But the *Sobik* court put little restriction on "good faith" as that term appears in § 768.31(5), limiting its holding to the narrow circumstances of the case. Specifically, the release in question was given after judgment; it was given to a joint tortfeasor who agreed not to appeal; and it was given for an unconscionably small price ($1,000 out of a total liquidated damage award of more than $83,000). Only under those facts were

the parties held to have violated the "good faith" condition of the statute. The *Sobik* court implied that any other settlement would be upheld provided there were only "some reasonable basis for the amount of the settlement with the tortfeasors beyond the claimant's express desire to have those who appeal pay and those who do not appeal be relieved of responsibility." 371 So.2d at 711–12.

There is such a "reasonable basis for the amount of the settlement" in the instant case, namely, the maximum amount payable under Charles Fuquay's personal liability insurance. Defendant could have no more from him in contribution than it may have in set-off. No such conditions as appeared in *Sobik* are present here: the instant settlement has not been given after judgment or in the face of liquidated liability. Moreover, defendant has not challenged the good faith of the settlement negotiated by defendant Stant Manufacturing Co. Its objection to Charles Fuquay's settlement is likewise without merit, given the Court's holding that his alignment as plaintiff and spouse of the injured party is irrelevant to his ability to settle with her. Finally, General Motors will be able to assert any affirmative defenses it has against Charles Fuquay even if he is not a defendant in the case. Prejudice to General Motors' defense through settlement between spouses is not otherwise apparent.

In light of the foregoing, it is, upon consideration

ORDERED that counterclaim defendant Charles Fuquay's Motion to Dismiss, filed herein on June 22, 1981, is granted. The counterclaim of defendant General Motors, filed herein on May 29, 1980, is hereby dismissed.