Jacksonville Electric Co. v. Adams et al.—Syllabus.

THE JACKSONVILLE ELECTRIC COMPANY, A CORPORATION UNDER THE LAWS OF THE STATE OF FLORIDA, PLAINTIFF IN ERROR, v. STANLEY ADAMS, BY WRIGHT ALEXANDER ADAMS, HIS NEXT FRIEND, DEFENDANT IN ERROR.

1. The contributory negligence of parents in permitting a child, a boy four years and one month old, to go without a care taker upon the streets of a city upon which electric cars are operated, can not be imputed to the child in an

action by him against the corporation operating the electric cars, for damages resulting to him from the negligent operation of an electric car.

2. An instruction calculated to mislead the jury is properly refused.

3. Where the motorman of an electric car, being operated upon the streets of a city, should and must have seen a child of tender years, unattended, in dangerous proximity to the track upon which the car was being operated, it was his duty to use means "strictly commensurate with the demands and exigencies of the occasion" to prevent injuring such child, the burden of proof being upon the Electric Car Company to show that such means were used, and under such circumstances if such proof is not satisfactorily made, the company is negligent and liable for damages.

4. If there are several important issues in a case, it is not proper to single out one of them in an instruction, in such a way as might impress the jury that such issue was the controlling one, and thus mislead the jury; and such an in-struction is properly refused.

5. Where the bill of exceptions does not show any exception to the ruling of the trial judge denying a motion for a new trial, this court can not consider the merits of such motion.

This case was decided by Division B.

Writ of Error to the Circuit Court for Duval County.

STATEMENT.

On the 21st of April, 1903, the defendant in error Stanley Adams, hereinafter called the plaintiff, by W. A. Adams his next friend, filed his declaration against the plaintiff in error, hereinafter called the defendant, containing six counts. The first count is as follows:

"Stanley Adams, by Wright Alexander Adams, his next friend, plaintiff, by Bryan and Bryan, his attorneys, in this first count of his declaration sues Jacksonville Electric Company, a corporation organized and doing business under the laws of the State of Florida, defendant, for that heretofore on, to-wit, March 26th, 1903, the said defendant was the owner and operator of a certain street car propelled by the power of electricity, numbered 88, that defendant through its agents and servants have the exclusive control and management of said street car and was operating same in the City of Jacksonville, Duval county, Florida, upon certain street railroad track of defendant, located upon Bridge Street and Monroe Street and divers other streets in said City of Jacksonville; that plaintiff was on the day aforesaid, to-wit: March 26th, 1903, of the age of four years and one month; that on said day to-wit: March 26th, 1903, in the light of day at to-wit: 8 o'clock in the forenoon thereof, while plaintiff was lawfully on said Monroe street at or near the intersection of said Monroe street with said Bridge street, the defendant by and through its servants and agents, then and there carelessly and negligently propelled its said street car northward on said Bridge street and westward into and upon said Monroe street and then and there by means of said street car so carelessly and negligently operated by the said defendant did wrongfully, carelessly, violently and negligently knock down and run upon the plaintiff; that the said street car passed over and upon the plaintiff and one of the wheels of said street car cut, mashed, bruised and crushed plaintiff's left foot to such an extent that it became and was necessary to amputate plaintiff's left leg between the foot and the knee; that plaintiff was thereby mained for life, and greatly wounded, bruised and hurt, and became sick, sore and lame and disordered

and so remained for a long space of time, to-wit: from thence hitherto during all of which, plaintiff has suffered great mental and bodily pain.

Wherefore the plaintiff says he has sustained damages to the amount of twenty-five thousand dollars ($25,000.00) and therefore brings this his suit."

The second count is similar to the first, with the additional allegation that the plaintiff was "in the exercise of due and reasonable care and caution," when he was injured.

The third count is similar to the first with the additional allegation that the defendant propelled its street car northward on Bridge street and westward into and upon Monroe street "carelessly and negligently and without giving proper signal or signals, and without giving proper warning or warnings."

The fourth count is like the first with the additional allegation that the car was being run "at great and unlawful speed" when the plaintiff was injured.

The fifth count is like the first except that it contains allegations to the effect that Bridge street extends north and south, and Monroe street east and west, and that they intersect, and that at and near the intersection they are much frequented and that said place of intersection was naturally attractive and interesting to a child of tender years, and such a child was likely to expose himself to injury upon the street car track at said intersection, and that the defendants officers and agents well knew these facts.

The sixth count avers each and every allegation of the preceding five counts.

The defendant demurred to the declaration stating in substance the following points of law to be argued: 1st.

That the declaration does not state a valid cause of action and is insufficient in law.

2nd. The declaration fails to allege that both the child and parents were free from fault.

3rd. The declaration fails to show gross negligence upon the part of the defendant.

4th. The child being permitted to go at large, the negligence of the parents is imputed to the child.

This demurrer was overruled, and the defendant pleaded, first, not guilty; and, second, that the injuries and damages complained of were caused solely by the negligence and carelessness of the parents of Stanley Adams in permitting him to go at large and in the public streets, their home fronting the track of defendant, without any caretaker, and said Stanley Adams being a child of tender age to-wit: four years and one month, and that said negligence and carelessness became and was the negligence and carelessness of the said Stanley Adams.

The above second plea was demurred to, and the demurrer sustained by the Circuit Judge. No other plea was filed, and the case was tried on the plea of not guilty. The jury rendered a verdict for the plaintiff for $7,000, a judgment rendered thereon, and the case is here on writ of error from said judgment. Such other facts as it may be necessary to state will be given in the opinion.

*J. E. Hartridge,* for Plaintiff in Error.

*Bryan & Bryan,* for Defendant in Error.

HOCKER, J. (*after stating the facts.*) The first three assignments of error involve the same question presented in different modes, *viz*: whether the supposed negligence
28 S. C.

of the parents of Stanley Adams—an infant four years and one month old in permitting him to go upon the street in the City of Jacksonville, without a care taker, can be imputed to the said infant, so as to defeat a recovery by him in this action. We say "supposed negligence" for it does not clearly appear under what circumstances Stanley Adams happened to be on the street at the early hour of the morning when he was injured. We will treat the case upon the theory that his parents were passively negligent in permitting him to be there. The decisions of the courts upon this question are not uniform. It was held in England in the case of Lynch v. Nurden, 5 Jurist 797, that the rule of law under which a plaintiff who has contributed to an injury occasioned by the negligence of the defendant can not recover a compensation in damages, does not apply where the plaintiff is a person incapable of exercising ordinary care and caution. Where, therefore, the defendant's servant left a horse and cart unattended in a public street, and the plaintiff, a child under seven years of age, climbed on the wheel, and other children urged forward the horse, whereby the plaintiff was thrown to the ground and the wheel fractured his leg, it was held that on these facts the jury were justified in finding a verdict for the plaintiff, if they were of opinion that there was negligence on the part of the servant." Nothing is said by Lord DENMAN, C. J. who rendered the opinion about the negligence of the parent in permitting the child to be upon the streets unattended. In the case of Waite v. North Eastern Railway Co., Ellis Blackburn & Ellis (96 E. C. L.) 728, the facts were that a grand mother who had charge of a child too young to take care of itself bought two tickets at a railway station for the purpose of the two being conveyed on the railway. While the grand

mother and child were on the railway, after the tickets had been bought, the child was injured by an accident caused by the joint negligence of the grand mother and the company's servants. It was held that the child could not recover. COCKBURN, C. J. said: "I put the case on this ground: that when a child of such tender and imbecile age is brought to a railway station, or to any conveyance, for the purpose of being conveyed, and is wholly unable to take care of itself, the contract of conveyance is on the implied condition that the child is to be conveyed subject to due and proper care on the part of the person having it in charge. * * * Here the child was under the charge of his grand mother, and the company must be taken to have received the child as under her control and subject to her management." In these views the other judges agreed.

In the case of Lygo v. Newbold, Welsby, Hurstone & Gordon, (9 Exch.) 302, POLLOCK, C. B. says: "The case last put raises a doubt as to the authority of Lynch v. Nurdon, if it be applicable to the case where a child receives an injury from indulging in what is called the natural instincts of a child by getting up behind a gentleman's carriage, there being no servant there." And it is said by HOAR, J. in Wright v. Malden and Melrose Railroad Company, 4 Allen (Mass.) 283, that though questioned in Lygo v. Newbold, the case of Lynch v. Nurdin has generally been followed as an authority. For a discussion of the state of the English law on this question see Beach on Contributory Negligence, secs. 137, 138, 139. In the United States the courts are divided. What is known as the New York rule laid down in Hartfield v. Roper, 21 Wend. 614, established the doctrine that the negligence of the parent contributing to the injury of an infant of tender years, is imputed to the infant and

prevents a recovery of damages on behalf of the infant. Massachusetts and some other States have followed this rule. In the case of Robinson v. Cone, 22 Vt. 213, the New York rule is repudiated and what is known as the Vermont rule was established. A large majority of the States which have made deliverances upon this question have followed the Vermont rule. See Ray's Negligence of Imposed Duties, secs. 194, 195 *et seq*; Chicago City R. Co. v. Wilcox, 138 Ill. 370, 27 N. E. Rep. 899, S. C. 21 L. R. A. 76; and note. In Bishop on Non-Contract Law, sections 578 to 591, the author discusses these rules at some length. In section 582, he says: "This new doctrine of imputed negligence, whereby the minor loses his suit, not only where he is negligent himself but where his father, grand mother or mother's maid is negligent, is as flatly in conflict with the established system of the common laws as anything possible to be suggested. The law never took away a child's property because his father was poor, or shiftless or a scoundrel, or because anybody who could be made to respond to a suit for damages was a negligent custodian of it. But by the new doctrine after a child has suffered damages which confessedly are as much his own as an estate conferred upon him by gift, and which he is entitled to obtain out of any one of several defendants who may have contributed to them, he can not have them if his father, grand mother or mother's maid happens to be the one making a contribution. In these and other respects it is submitted the established principles stated in a preceding section are conclusive of the proposition that the doctrine now in contemplation does not belong to the common law." Mr. Bishop concludes: "It is the better doctrine that the parents contributory negligence does not cut off the child's claim for an injury nor does the child's the parents." Sec. 591 Id.;

Beach on Contributory negligence, Secs. 140, 141; New-man v. Phillipsburg Horse Car R. Co., 52 N. J. L. 446, 19 Atl. Rep. 1102, S. C. 8 L. R. A. 842, and notes; Gov-ernment Street R. R. Co. v. Hanlon, 53 Ala. 70; Huff v. Ames, 16 Neb. 139, 19 N. W. Rep. 623. It seems to be un-disputed that where the parent sues for loss of services sustained by an injury to the child then the contributory negligence of the parent may be a bar. Bishop on Non-Contract Law, Sec. 577. It would be prolix to go into a minute examination of the great number of cases bearing on this question; an examination of the authorities cited will discover them. We think it enough to say that in our opinion the weight of reason and authority is with the Vermont rule and that in an action by the child for damages for an injury, the negligence of the parent can not be imputed to the child so as to prevent a recovery.

The fourth assignment of error is based on the refusal of the trial judge to give the following instruction to the jury at the request of the defendant, *viz*: "A child to the extent that he has knowledge and understanding of the danger, or where the danger is of such a nature as to be obvious even to one of his years, is under a duty under the law to avoid the danger, and if on the track to get off and out of the way of the danger, or if near the track and the car is in plain sight, not to go upon the track in front of the car, and if you believe from the evidence in this case that Stanley Adams had knowledge and under-standing of the danger, or the danger was of such a nature as to be obvious to one of his years, and the car was in plain sight, and he was on the track, and did not get off and had time to get off, or was near the track and ran upon the same in front of the car, and so near the car as to make it impossible for the car to be stopped before

reaching him, your verdict should be for the defendant."
The bill of exceptions states that this charge was based
upon the following state of facts: "That Stanley Adams
was a child four years and one month of age at the time
of his injuries, and of more than average brightness and
intelligence, as appeared by the exhibition to the jury,
and while on or near the track of the defendant was in a
position to see the car approaching, and that from his
position at the time of the accident the car would have
been in plain sight, and was near the track, and suddenly
ran near the car, or so near as to make it impossible to
stop the car before reaching him." This instruction it
seems to us was calculated to mislead and embarrass the
jury considered as containing several independent con-
ditions and propositions separated by the disjunctive
"or", the existence of any one of which would have re-
quired a verdict for the defendant, when only one of them
is covered by the predicated statement of facts. Again,
we do not think that the predicated statement of facts
warranted the exclusion from the consideration of the
jury, under the law of this State, of all consideration of
contributory negligence on the part of the defendant.
Granting that this child of four years and one month of
age was more than ordinarily intelligent; that he was on
or near the track; that the car was in plain sight; that
it was his duty to avoid danger, and not to go in front of
the car or dangerously near it, still, the measure of his
duty should be the discretion of one of his years. Bishop
on Non-Contract law, Sec. 590. It is not stated that he
actually saw the car; that the agents of the company
took any precaution to attract his attention, or any meas-
ure to prevent his injury though they must have seen
him.

In the case of Florida Cent. & P. R. Co. v. Williams, 37 Fla. 406, 20 South. Rep. 558, this court holds that "where steam railroads are laid and operated along or across the streets of populous towns or communities where numerous people of all conditions and descriptions are aggregated or likely to be, it is their duty to operate the dangerous implements used by them with the utmost degree of care, strictly commensurate with the circumstances by which they are there surrounded, in order to avoid injury to others. But while it is thus the duty of such companies to guard against injury to others with the utmost care, caution and vigilance, there is at the same time a mutual obligation resting upon the public, and each and every of them in the presence of such dangerous surroundings, to exercise such a degree of care, caution and vigilance for their own safety as is commensurate with the known dangers there present." This case occurred previous to the enactment of section 1, Chapter 4071, laws of 1891, which is as follows: "A railroad company shall be liable for any damage done to persons, stock or other property by the running of the locomotives or cars or other machinery of such company, or for damages done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption being in all cases against the company." In the case of Consumers' Electric Light & St. R. Co. v. Pryor, 44 Fla. 354, 32 South. Rep. 797, it was held that this act (Chap. 4071) was applicable to electric street railways, and that while it does not arbitrarily fix liability for an injury done, it does raise a presumption of negligence as arising from the injury done. In the case of Morris v. Florida Cent. & P. R. Co.,

43 Fla. 10, 29 South. Rep. 541, this court had occasion to construe this section. It is held that under its provisions what will constitute the amount or kind of diligence that will be required as "ordinary and reasonable" must necessarily vary under different circumstances. It can not be measured or ascertained by any fixed or inflexible standard because the words just quoted are themselves relative terms, and what under some circumstances would be ordinary and reasonable diligence, might under other conditions amount to even gross negligence." It is further said that the care and diligence to be used in cases embraced in the statute should be "strictly commensurate with the demands and exigencies of the occasion and with the relationship that the company bears at the time to the party in question." We think that the motorman should and must have seen the plaintiff on or dangerously near the track, that it was his duty to see him, and seeing that he was of tender years it was his duty to use means "strictly commensurate with the demands and exigencies of the occasion," to prevent injuring him. The presumption is against the defendant, and neither the charge or the facts predicated meets and overcomes this presumption. Bottoms v. Seaboard & Roanoke R. Co., 114 N. C. 699, 19 S. E. Rep. 730, S. C. 25 L. R. A. 784 and notes; Clarke's Accident Law (Street Railways) Sec. 105; Consumers' Electric Light & St. R. Co. v. Pryor, *supra;* Nellis on Street Surface Railroads, pp. 298 and 374, *et seq.* More care must be used towards children than towards adults, and if in the exercise of due care the motorman should have seen the child and did not, then he was negligent. Clark's Accident Law, Sec. 104. We do not think the court erred in refusing to give this charge.

The fifth assignment of error is based on the refusal of the judge to give the following charge, *viz*: "Under the law, away from the street crossing, street cars have the right of way on their tracks in the streets over pedestrains and vehicles." This requested instruction was predicated upon the fact that Stanley Adams was not on a street crossing, but eighty or ninety feet therefrom when injured. As an abstract question this may be a correct statement of the law, but what particular application of it the jury were expected to make we are not advised. It was calculated to impress the jury that the company had a superior right upon its track, which afforded a complete defense to the defendant, irrespective of its actual or presumptive negligence, or its duties to the plaintiff. If there are several important issues, it is not proper to single out one of them as the controlling issue (11 Ency. Pl. & Pr. 185) and in this case it is evident that the issue presented in this instruction was not the only or controlling one.

The remaining assignments of error are based on the overruling of a motion for a new trial. These can not be considered by this court inasmuch as the bill of exceptions does not show any exception to the ruling of the court thereon. McDonald v. State, 46 Fla. 149, 35 South. Rep. 72; Parnell v. State, 47 Fla. 90, 36 South. Rep. 165, and cases cited; Dupuis v. Thompson, 16 Fla. 69, text, 73.

The judgment of the Circuit Court is affirmed.

TAYLOR and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ. concur in the opinion.