610 P.2d 567

**Lonnie C. WRIGHT, Wayne Wright and Deniece Jane Wright, husband and wife, Plaintiffs,**

v.

**Earl W. JOHNSON, dba Johnson Oil Company, Defendant, Third-Party Plaintiff, Respondent,**

v.

**SAFECO INSURANCE COMPANY, Third-Party Defendant, Appellant,**

v.

**HIGGINS & RUTLEDGE INSURANCE, INC., Third-Party Defendant.**

**No. 12966.**

Supreme Court of Idaho.

May 8, 1980.

James D. LaRue of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for third-party defendant, appellant.

Bruce O. Robinson, Nampa, for defendant, third-party plaintiff, respondent.

McFADDEN, Justice.

On January 22, 1974, third-party defendant and appellant Safeco Insurance Company, through its agent Higgins & Rutledge Insurance Company, issued its commercial insurance policy no. 552401 to Earl Johnson, doing business as Johnson Oil Company, a fuel oil distributor. When this policy was issued, it was to insure against public liability a 1963 International two-ton truck and other vehicles owned by Johnson Oil Company; liability insurance coverage or the lack thereof on this truck is the subject of this appeal.

Three weeks after the policy was issued, on February 12, 1974, Johnson requested the company to execute an endorsement suspending the truck from coverage under the policy. The document, entitled "Suspension of Insurance" states:

"It is agreed that except with respect to maintenance and testing the vehicle on the insured's premises, the insurance afforded with respect to the coverages and automobiles indicated below . . . is suspended in accordance with the request of the insured."

The document lists the 1963 International truck as the automobile to which the suspension of coverage applies, and indicates that coverage for bodily injury liability, property damage liability, medical payments, uninsured motorists or family protection, and collision was suspended.

In June of 1974 Johnson leased the truck to the Bureau of Land Management for use at the BLM's Boise Interagency Fire Center. At this time Johnson discussed the need to reinstate coverage for the truck with Higgins & Rutledge. The agent indicated that because the BLM would put the vehicle to hazardous use (fueling aircraft), it would be reclassified to a higher risk category, with resultant higher premiums. Johnson then consulted the BLM, and was assured that the agency would provide insurance for the vehicle during the time it was in use at the Center. Johnson then ordered the truck's suspended coverage fully deleted. This involved initial reinstatement of the coverage, followed by simultaneous complete deletion, all of which was accomplished by endorsements to the policy dated June 18, 1974. The endorsements indicate deletion of the same coverages which had been initially suspended. Johnson received a premium rebate of $138. The following November Johnson negotiated a second lease with the BLM. The "Statement of Adjusted and/or Advance Premiums," dated December 2, 1974, which estimated premiums for the period January 22, 1975 to January 22, 1976, does not list the truck as an insured vehicle.

On May 6, 1975, pursuant to a request by the BLM, Johnson picked up the 1963 truck for repairs and maintenance. He drove to the BLM premises in a 1970 International truck, switched the license plates on the two trucks, left the newer truck with the BLM, and drove the older truck to his premises to accomplish the requested repairs and maintenance. While delivering the truck to a shop for repairs the next day, he was involved in an accident which resulted in injury to plaintiff Lonnie C. Wright.

Wright brought suit against Johnson on February 6, 1976, claiming damages in excess of $750,000, and after Safeco refused to defend the suit, Johnson filed a third-party complaint, asking the district court to declare Safeco's and Higgins and Rutledge's liability for any damages recovered against Johnson, and their duty to defend the suit. The complaint alleges Safeco's liability to be based on the policy, and Higgins and Rutledge's either on the policy or on its failure adequately to arrange insurance protection for Johnson. After answering the complaint, Safeco and Higgins and Rutledge filed separate motions for summary judgment, claiming, *inter alia*, that the deletions and the premium rebate relieved them of liability.

On March 10, 1978, the district court ruled that Johnson must have assumed that he was insured by the "blanket" policy; that "from the policy provisions there is no need for Johnson to give advance notice to the insurer each time a vehicle not listed in any schedule is driven . . . ."; and that the non-payment of premiums for the truck would be cured on annual audit. It accordingly denied Safeco's motion for summary judgment. The court's order also denies Higgins and Rutledge's motion for summary judgment, although without prejudice, expressly declining to decide whether the agency might be liable for failing to arrange coverage for Johnson in the event Safeco is found not liable on appeal.

On April 21, 1978, the district court certified to this court the question of Safeco's liability and duty to defend under the policy, and pursuant to I.A.R. 12 the appeal was certified by this court.

Johnson seeks coverage under the policy for liability he may have to plaintiffs Wright. Section II of the policy in its "declarations" affords "blanket liability insurance." In the "Blanket Liability Insurance Coverage Supplement," the policy makes the insurer liable

> "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . [and to] have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury . . ."

"Coverage C" makes this language applicable to "Bodily Injury—Automobile," and the declarations sets liability limits of $50,000 per person and $100,000 per occurrence. In "Conditions Applicable only to Section II" the policy limits the insurance company's liability to any bodily injury or property damage arising out of "ownership . . operation [or] use . . . of (1) any automobile owned or operated by or rented or loaned to any insured . . . ."

The question we address is whether the subsequent endorsements deleting coverage for the truck in question operated to discharge Safeco's obligations under the policy.

■ An insurance policy is a contract between two entities in which, as a general rule, the payment of premiums is offered as consideration for the coverage of specified risks. Like any other contract, the policy may be amended by agreement of the parties and the exchange of appropriate consideration. In the case of insurance policies such amendment is typically accomplished by documents known as endorsements. In assessing the reach of insurance policies we are bound by law to consider both policy and endorsements:

> "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement, or application lawfully made a part of the policy." I.C. § 41–1822.

So long as endorsements are not obtained fraudulently, do not violate public policy, are supported by consideration and are otherwise valid under Idaho contract and insurance law principles, the courts must give them effect. When dealing with automobile liability policies "the effect of an [e]ndorsement may be to remove from the coverage of the policy an automobile which would otherwise have been covered." 7 Couch on Insurance 2d § 45:174, at 229.

■ As previously pointed out, the language of the appropriate endorsements is plain that on June 18, 1974, the policy's protection against liability for bodily injury, property damage and other coverage in connection with the truck in question was deleted pursuant to the request of appellant. At the time of this deletion a return premium of $138 was forwarded to Johnson ($58 of this return premium accounted for the deleted bodily injury liability protection, the remainder attributable to the deleted coverages for property damage and medical payments liability and for fire and theft and uninsured motorists coverage). This deletion removed the coverage which Johnson seeks in this case for the time of deletion, June 18, 1974, to the end of that policy term, January 22, 1975.

In "Conditions Applicable to all Sections," it is expressly provided that Safeco agrees to provide coverage "in consideration of the payment of premiums . . . ." In the following policy term, January 22, 1975 to January 22, 1976, during which time the accident with Wright occurred, premiums were neither computed nor charged for the truck in question. The language of the policy and endorsements is thus clear: coverage for the truck was removed in 1974 and never reinstated.

In support of his argument that the policy nonetheless provides coverage, Johnson first notes the need to harmonize endorsements with the original policy wherever possible. Johnson claims that the deletions removed only "primary" coverage for the truck, but that "secondary" coverage remained. Without expressing an opinion on what efforts courts must make to harmo-

nize endorsement and policy, we hold that the language of the endorsements in this case is too clear to allow us to declare the coverage Johnson suggests. Nowhere does the policy make reference to secondary or primary coverage; and the language of the endorsement is plain: coverage for the truck was deleted in 1974 and not reinstated in 1975 as noted above. Black's Law Dictionary defines "delete" as "[t]o erase; to remove; to strike out." (5th ed. 1979). Indeed, the common understanding of the meaning of this term is not otherwise. Johnson's suggested approach to "harmonizing" the policy and endorsements actually amounts to unilaterally rewriting the parties' obligations, an action which we will not take.

Johnson also argues that representations he made to his insurance agent regarding his desire to be covered when driving the truck compel us to hold Safeco liable under the policy. In certain instances an insurer may be held liable based on the representations of its agents, despite the presence of contrary language in the actual policy. *E. g., Lewis v. Continental Life and Accident Co.*, 93 Idaho 348, 461 P.2d 243 (1969). But at his deposition Johnson testified that he indicated absolutely no desire to Higgins and Rutledge that he be covered while driving the truck, and that the agency made no such representations of coverage while he operated the truck. The trial court apparently agreed, stating in its memorandum opinion that

> "Johnson neglected to tell Safeco or Higgins and Rutledge anything about placing the 1963 tanker under insurance again at any time prior to the accident."

If the evidence indicated that Higgins and Rutledge had assured Johnson that despite the deletions he was somehow covered while driving the deleted vehicle, our holding might be different. But no such evidence is in the record.[1]

Finally, Johnson argues that he reasonably assumed he would be covered in such a situation, and that under the doctrine of reasonable expectations as expounded in *Corgatelli v. Globe Life & Acc. Ins. Co.*, 96 Idaho 616, 533 P.2d 737 (1975), we must therefore uphold the trial court's imposition of coverage against Safeco. However, in *Casey v. Highlands Ins. Co.*, 100 Idaho 505, 600 P.2d 1387 (1979), this court expressly rejected the doctrine of reasonable expectations in favor of traditional rules of construction. Johnson's argument in this respect is therefore unavailing.

The order denying Safeco's motion for summary judgment is reversed and the cause remanded with instructions to the district court to enter an order granting Safeco's motion for summary judgment. Costs to appellant Safeco. No attorney fees allowed on appeal.

DONALDSON, C. J., and SHEPARD, BAKES and BISTLINE, JJ., concur.

---

1. It is a different question whether Higgins and Rutledge may have breached its duty to its customer by failing to provide him with coverage which would protect him under any circumstances thus creating a tort liability. See *McAlvain v. Gen. Ins. Co. of America*, 97 Idaho 777, 554 P.2d 955 (1976). That question was reserved by the trial court in denying Higgins and Rutledge's motion for summary judgment without prejudice and not certified on appeal; we express no opinion on it.