392 So.2d 256 (1980)
Edward S. QUEST et al., Appellants,
v.
Leon JOSEPH, Etc. et al., Appellees.
No. 78-2090.
District Court of Appeal of Florida, Third District.
May 20, 1980.
On Rehearing January 7, 1981.
Magill, Sevier & Reid and Kevin P. O'Connor, Miami, for appellants.
Horton, Perse & Ginsberg, Hawkesworth & Schmick, Miami, for appellees.
Before HAVERFIELD, C.J., and BARKDULL and HENDRY, JJ.
PER CURIAM.
Defendant, Edward Quest, appeals an adverse final judgment and the withholding of execution of judgment on his third party claim for contribution in an action for damages arising out of a motor vehicle pedestrian accident.
On the day in question, plaintiff Daren Joseph, a minor, was riding a tricycle (known as a Big Wheel) down a slight incline of the driveway at his home and into the street, at which time he was struck by a vehicle owned by Edward Quest and driven by his wife, Marion. Leon Joseph, individually and on behalf of Daren, sued Quest, his wife, and their liability insurer for damages as a result of the accident. Eyewitness testimony was conflicting as to whether Daren darted out of the driveway into the path of the oncoming Quest vehicle or whether he had been in the street for a number of seconds before the accident. Nevertheless, it was uncontroverted that Daren's mother knew he was riding his Big Wheel down the driveway and into the street. Quest alleged that Daren's mother was negligent in her supervision and filed a third party complaint for contribution against her. The cause was tried by jury which apportioned the negligence amongst the parties as follows:

*257
 Leon Joseph 10%
 Daren Joseph 10%
 Marion Quest 55%
 Ellen Joseph 25%

In addition, the jury assessed Daren Joseph's total damages at $150,000 and those of his father, Leon, at $17,000. The trial court entered final judgment[1] accordingly awarding Daren the net sum of $135,000, his father, Leon, $13,600 and Quest, on his third party complaint, $37,150. However, execution on the $37,150 judgment was stayed until Quest paid the $135,000 and $13,600 judgments. Quest appeals and alleges that the court (1) improperly apportioned the jury verdict, and (2) should have permitted a reduction or set-off of the award against him in the main claim by that amount he recovered on his third party claim against Ellen Joseph. Leon Joseph cross-appeals and urges as error the entry of judgment against his wife, Ellen, for contribution.
The dispositive issue in the case at bar is that presented on cross-appeal, whether or not a right of contribution existed from Ellen Joseph, the mother of the minor child Daren.
Joseph argues that his wife Ellen is immune from liability by virtue of the family immunity doctrine and therefore cannot be considered a joint tortfeasor from whom Quest is entitled to contribution. See 3-M Elec. Corp. v. Vigoa, 369 So.2d 405 (Fla. 3d DCA 1979). Nevertheless, our Supreme Court in Shor v. Paoli, 353 So.2d 825 (Fla. 1978), held that the common law doctrine of interspousal immunity does not prevent a tortfeasor from seeking contribution from another tortfeasor under the Uniform Contribution Among Joint Tortfeasors' Act (Section 768.31, Florida Statutes [1975]) even though the other tortfeasor is the spouse of the successful plaintiff. The court in Shor, supra, reasoned as follows:
"The doctrine of family or interspousal immunity is based on the desirability of the preservation of the family unit. The law of contribution of joint tortfeasors is meant to apportion the responsibility to pay innocent injured third parties between or among those causing the injury. "In the case at bar it was determined that both Paoli and Shor caused the injury. Shor's husband collected 100% of his damages from Paoli. To say that Shor doesn't have to contribute and account for her wrongdoing would be unfair to Paoli and a windfall to Shor. This is not a case where the husband sued the wife on account of her negligence so we are not doing any real damage to the doctrine. This is a case where the joint tortfeasor sued the joint tortfeasor and we are ruling in support of that statute." ... 353 So.2d at 826
Likewise, the instant case does not present a situation where the minor Daren Joseph is suing his mother Ellen for negligence or Leon is suing Ellen as his wife. She as well as Quest was found by the jury to have been negligent, thus having caused Daren's injuries. To hold that Ellen does not have to contribute and account for her wrongdoing would be unfair to Quest and a windfall to Ellen. Under the facts of this case we find that Quest is entitled to contribution and judgment was properly entered in his favor on his third party complaint. To the extent that 3-M Elec. Corp. v. Vigoa, 369 So.2d 405 (Fla. 3d DCA 1979), supra, (which we believe is distinguishable on the facts) is inconsistent with the present holding, we hereby recede from the holding in 3-M *258 Elec. Corp. We further note that the 3-M Elec. Corp. case relied upon Mieure v. Moore, 330 So.2d 546 (Fla. 1st DCA 1976) which was overruled by Shor v. Paoli, 353 So.2d 825 (Fla. 1978), supra, insofar as the holdings were inconsistent. Thus, we find no reversible error has been presented by Josephs on cross-appeal.
We next considered Quest's arguments on appeal that the trial court improperly apportioned the jury verdict and erred in failing to permit a reduction in the judgment against him.[2]
Quest having admitted that the above arguments have been decided adversely to his position, we find no merit therein. See Metropolitan Dade County v. Asusta, 359 So.2d 58 (Fla. 3d DCA 1978); Moore v. St. Cloud Utilities, 337 So.2d 982 (Fla. 4th DCA 1976).
For the reasons stated, the judgments on the complaint and cross-complaint are affirmed.
Affirmed.

ON REHEARING EN BANC
Before HUBBART, C.J., and BARKDULL, HENDRY, SCHWARTZ, NESBITT, BASKIN and PEARSON, JJ.
SCHWARTZ, Judge.
Based on the fact that the panel opinion conflicts with and specifically recedes from our prior decision in 3-M Electric Corp. v. Vigoa, 369 So.2d 405 (Fla. 3d DCA 1979), upon our own motion we ordered and have heard reargument en banc. Fla.R.App.P. 9.331(c)(1). We now adhere to the conclusion that an action for contribution may be maintained against the parent of an injured minor child-plaintiff, notwithstanding the child's inability to sue the parent directly and even when the parent's liability involves the negligent supervision of the child. Thus, we confirm the consignment of 3-M to oblivion.
As the panel opinion indicates, our holding to this effect is founded upon the determination in Shor v. Paoli, 353 So.2d 825 (Fla. 1977), that the doctrine of interspousal immunity does not include or preclude a contribution action by a defendant-tort-feasor against the spouse of the injured plaintiff. In Florida Farm Bureau Ins. Co. v. Government Employees Ins. Co., 387 So.2d 932 (Fla. 1980), the supreme court emphatically reiterated this principle in a decision which was significantly rendered after it had similarly readhered to the immunity rule itself. Raisen v. Raisen, 379 So.2d 352 (Fla. 1979). Florida is thus a member of the small but growing minority of jurisdictions which have adopted the doctrine that family immunity is merely a bar to the right to sue another and does not affect the status of the negligent family member as a joint-tortfeasor, which, under Section 768.31, Florida Statutes (1979), is indispensable to liability for contribution. Perchell v. District of Columbia, 444 F.2d 997 (D.C. Cir.1971); Bedell v. Reagan, 159 Me. 292, 192 A.2d 24 (1963); Restifo v. McDonald, 426 Pa. 5, 230 A.2d 199 (1967); Puller v. Puller, 380 Pa. 219, 110 A.2d 175 (1955); Zarrella v. Miller, 100 R.I. 545, 217 A.2d 673 (1966); see W. Prosser, Law of Torts § 50 (4th ed. 1971), text and authorities at n. 75; Annot., Tortfeasor-Contribution-Family Member, 19 A.L.R.2d 1003 (1951). Moreover, since the Shor rule is based on the principle that all those jointly responsible for a particular injury should bear proportionate liability, there is, as was stated and held in Withrow v. Woods, 386 So.2d 607 (Fla. 5th DCA 1980), no meaningful distinction between the Raisen interspousal immunity involved in Shor and Florida Farm Bureau and the parent-child relationship, governed by Orefice v. Albert, 237 So.2d 142 (Fla. 1970), as in 3-M and the case at bar. See, Restifo v. McDonald, supra; Puller v. Puller, supra; Pedigo v. Rowley, 101 Idaho 201, 610 P.2d 560 (1980) (Bakes, J., dissenting, citing and relying on Shor).
The decision in 3-M was not directly contrary to this line of reasoning. Although the opinion admittedly did not articulate this factor, it was based upon the fact that, *259 unlike Shor, Mieure v. Moore,[1] and Florida Farm Bureau, in all of which the spouse negligently operated a motor vehicle, the asserted liability of the parent, as here, arose from the failure properly to supervise the child.[2] It was thought that, in contrast with the obvious obligation to drive an automobile in a reasonably careful manner to avoid injury to others, there was no existing duty owed by the parents to the child properly to supervise him  and thus no tort  which would (absent immunity) be actionable by the child directly against the parent. Hence, it was silently reasoned that the defendant and the negligently supervising parent were not commonly liable to the child and were therefore not "joint tortfeasors," so as to permit an action for contribution. Prosser, supra, § 50; Annot., Uniform Contribution Among Tortfeasors Act, 34 A.L.R.2d 1107 (1954); see, Touche Ross & Co. v. Sun Bank of Riverside, 366 So.2d 465 (Fla. 3d DCA 1979), cert. denied, 378 So.2d 350 (Fla. 1979). This view was adopted in the much-discussed case of Holodook v. Spencer, 36 N.Y.2d 35, 364 N.Y.S.2d 859, 324 N.E.2d 338 (1974). In Holodook, the New York Court of Appeals, which had previously abolished parent-child immunity itself in Gelbman v. Gelbman, 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969), held that there was nonetheless no parental liability either directly or for contribution[3] for negligent supervision simply because there was no cognizable tort or "duty" owed by the parent to the child to exercise care in this respect. While that approach appealed to the 3-M court we are now of the view that it is not supportable by legal history or analysis.
In Florida, the responsibility to exercise care so as to avoid exposing one's child to the risk of injury[4] has been long recognized in a variety of contexts. While the parent's negligence is of course not imputed to the child in the child's independent case for his own damages, e.g., Burdine's Inc. v. McConnell, 146 Fla. 512, 1 So.2d 462 (1941); Jacksonville Electric Co. v. Adams, 50 Fla. 429, 39 So. 183 (1905), inadequate supervision by the plaintiff-parent constitutes a defense  of contributory or comparative negligence  to the parent's derivative action for loss of services or expenses caused by the child's injury, Jacksonville Electric Co. v. Adams, supra; and in an action to recover for the child's wrongful death. E.g., Winner v. Sharp, 43 So.2d 634 (Fla. 1949); Martinez v. Rodriquez, 410 F.2d 729 (5th Cir.1969); Humphrey v. City of Homestead, 224 So.2d 739 (Fla. 3d DCA 1969), cert. denied, 232 So.2d 178 (Fla. 1969). Indeed, in Alves v. Adler Built Indus. Inc., 366 So.2d 802 (Fla. 3d DCA 1979), cert. denied, 378 So.2d 342 (Fla. 1979), we went so far as to hold that the parents' negligent supervision was *260 the sole proximate cause of their child's death. As was said very specifically in Humphrey at 224 So.2d 740:
39 Am.Jur. Parent and Child, § 46 states:
`* * * A parent in the immediate control of a child of tender years who is too young to be capable of exercising any self-reliant care for its own safety is responsible for its preservation from hazards, and it is the parent's duty to watch over such child and to guard it from danger. In such case, the parent may be regarded in a sense as a repository of a trust to nurture and protect his offspring. Parents are, of course, not required to do the impossible in caring for their children. As a rule, however, they are bound to provide such reasonable care and protection as an ordinarily prudent person, solicitous for the welfare of his child, would deem necessary. * * *'
In 25 Am.Jur. Highways 231, it is reported:
`Effect of Negligence of Parent or Custodian.  It is the duty of parents and custodians of children who are non sui juris to use reasonable care to protect them against the known hazards incident to their presence on a street or other public way, and to permit or suffer such a child to go or be upon a highway unattended may constitute negligence on the part of the parent or custodian, although it does not do so under all circumstances.'
* * * * * *
In applying these general rules `it is a question of fact for the jury to decide whether such lack of supervision was negligence under all the circumstances.' [e.s]
Furthermore, our courts have established the right of the child himself directly to sue another entrusted with his care, such as a school or teacher, for negligent supervision. E.g., Barrera v. Dade County School Board, 366 So.2d 531 (Fla. 3d DCA 1979), and cases cited. Significantly, as the court noted in Benton v. School Board of Broward County, 386 So.2d 831, 834 (Fla. 4th DCA 1980), this duty has been compared and likened to that owed by "a reasonable and prudent parent." In the light of these decisions, we must conclude that the only reason that there are no Florida child-v.-parent-negligent-supervision-cases is not that there is no parental "duty" to supervise but that all such actions, on whatever basis, have been barred by intrafamily immunity.
This conclusion is supported by the facts that Holodook has not only been subject to searching criticism within New York itself, see Fuchsberg, J., specially concurring in Nolechek v. Gesuale, 46 N.Y.2d 332, 413 N.Y.S.2d 340, 385 N.E.2d 1268 (1978), but that it seems to stand entirely alone among the decided cases on the decisive question. While there is an obvious conflict as to whether a child may maintain an action against his parent for negligently supervising him, the issue has invariably been framed as involving the extent to which the immunity doctrine should be abolished. Compare, e.g., Gibson v. Gibson, 3 Cal.3d 914, 92 Cal. Rptr. 288, 479 P.2d 648 (1971) (abolition of parental immunity, including supervision); with Schneider v. Coe, 405 A.2d 682 (Del. 1979) (preserving immunity for supervision); see generally, Note, The "Reasonable Parent" Standard: An Alternative to Parent-Child Tort Immunity, 47 Univ.Colorado L.Rev. 795, 802-15 (1976); Annot., Negligent Parent-Child Injury-Liability, 41 A.L.R.3d 904, 976-80 (1972). Even those cases which have cited Holodook with approval, e.g., Schneider v. Coe, supra, Pedigo v. Rowley, supra, have relied upon its arguments[5] only to justify the refusal to abolish immunity in this area.[6] This approach *261 itself presupposes the existence of an actionable "tort" of negligent supervision from which the parent should or should not be immunized. Under the rationale of Shor, the recognition of that duty, rendering the parent a joint tortfeasor, leads inevitably to the allowance of a contribution action against him.
Mrs. Joseph also contends, however, that there are good reasons why a contribution action should not lie in any parent-child case.[7] She suggests that, unlike the husband-wife case which involves adults,[8] a child is not capable of himself maintaining an action for his own benefit, and must do so through his "next friend," typically of course, his parent. See, Youngblood v. Taylor, 89 So.2d 503 (Fla. 1956); Fla.R.Civ.P. 1.210(b). It is argued therefore that exposing the parent to the possibility of a judgment would have the effect of deterring actions by the child himself; and that any recovery actually obtained by the injured child would be effectively reduced by a subsequent judgment against a member, indeed the head, of the same family unit. While these arguments are not unsubstantial, we cannot accept them.
We first note that the alleged chilling effect of a potential contribution claim upon the child's case is speculative in the extreme. If the parent is insured, no actual familial "harm" would be done by such a claim, see, Stuyvesant Ins. Co. v. Bournazian, 342 So.2d 471 (Fla. 1977); if he or she is not insured it is unlikely that a contribution claim would be pursued. Even if it were, the parent would always be motivated to recover from the third party the net amount represented by the degree of negligence for which he is responsible. See, Noelchek v. Gesuale, supra, 385 N.E.2d at 1274, 413 N.Y.S.2d at 346; Holodook v. Spencer, supra, 324 N.E.2d at 347-48, 364 N.Y.S.2d at 872-73 (Jasen, J., dissenting). In any event, we do not believe that the supreme court would permit the conjectural possibility of potential deterrence to negate the very basis of the Shor decision, the notion that parties should be liable to the extent of their wrongdoing,[9] but no further, and thus that to deny contribution would both unfairly penalize the third-party and confer an unjustified windfall upon the also negligent family member. This principle, which also answers the "family unit" argument, was well-expressed in the dissenting opinion in Pedigo v. Rowley, supra, which, after quoting at length from Shor, states at 610 P.2d 567:
The inequity possible under the holding of the majority in this case is immediately evident. If the third party is minimally negligent  for example, 10%  and the immune parent is primarily at fault  for example, 90%  the third party will, according to the majority, be saddled with the entire judgment while the seemingly culpable parent bears no loss whatsoever. If the parent and the child are truly one economic unit, as the majority approvingly asserts by its quotation from the Holodook case, the parent profits by his own wrongdoing.
Accord, Rozell, Contribution Among Joint Tortfeasors When One Tortfeasor Enjoys A Special Defense Against Action by the Injured Party, 52 Cornell L.Q. 407, 411 (1967).
Moreover, even if we considered that the parade of horribles presented by the mother's counsel is not a fanciful one, we would *262 be powerless to indulge that belief. The decisions in Shor and Florida Farm Bureau squarely hold that contribution lies under the uniform act against a "tortfeasor" who is immunized from a direct action. Since, as our analysis has indicated, we are unable to detect a sound juridical reason that this ruling does not control this case, we are bound[10] to follow it until the supreme court says otherwise.[11]
For these reasons the judgment below, as to both the appeal and cross-appeal, is again
Affirmed.[12]
NOTES
[1] This cause came on upon this Court's Motion for Entry of Judgment upon the jury verdict. The jury awarded the plaintiff, Daren Joseph, a minor, the sum of $150,000 and found said minor to be guilty of 10% negligence. The jury further stated the mother of the minor plaintiff was guilty of 25% negligence. The Court finds that the minor plaintiff is entitled to recover $150,000 less 10% for his own negligence and that the father of the minor plaintiff is entitled to recover $17,000 less 10% for the minor plaintiff's negligence and 10% for his own negligence. The Court further finds that the defendants Edward S. Quest, Marion Hearl Quest and Liberty Mutual Insurance Company are entitled to Judgment against the minor plaintiff's mother for 25% of the total Judgment entered against the said defendants and that said sum is not a reduction or offset as to the minor plaintiff's claim or the minor plaintiff's father's claim.
[2] By the amount he was awarded on his third party complaint for contribution.
[1] 330 So.2d 546 (Fla. 1st DCA 1976), overruled in Shor "insofar as ... inconsistent herewith." 353 So.2d at 826.
[2] Berman, Time to Abolish Parent-Child Tort Immunity, 4 Nova L.J. 25 (1980) perceptively suggested at 58, note 156, that this distinction was indeed the basis of 3-M.
[3] It is fair to say that the Holodook conclusion was largely influenced by the court's wish to avoid what it considered the undesirable effects of permitting a contribution action, which it thought would inevitably follow a recognition of the "duty" to supervise. It is an anomaly that, as a result no contribution action lies in New York, where there is no immunity, while it may be maintained (as we hold) in Florida, where family immunity thrives. Raisen v. Raisen, supra.

Moreover, it is more than ironic that, twisting and turning within the conceptual restraints imposed by Holodook, the New York court in Nolechek v. Gesuale, 46 N.Y.2d 332, 413 N.Y.S.2d 340, 385 N.E.2d 1268 (1978), based on the same considerations of fairness to the original defendant which impelled Shor, approved a contribution action based on the parents' negligent supervision of the child in the operation of a motor vehicle, while simultaneously maintaining the inability of the child to sue directly. But see the cogent contrary view expressed in the dissenting opinion of Judge Cooke, 413 N.Y.S.2d at 351-52, 385 N.E.2d at 1278-79.
[4] Such cases as Gissen v. Goodwill, 80 So.2d 701 (Fla. 1955) which deal with the parent's duty to control his child so as to prevent the child from harming another, are not directly related to this issue. Nor are those which impose vicarious responsibility upon the parent for the torts of the child himself. See, e.g., § 790.22, Fla. Stat. (1979); § 322.09(2), Fla.Stat (1979).
[5] These include the undesirability of disrupting the family unit, particularly by permitting a child to "second-guess" his parent concerning the manner in which he is cared for. As the coexistence of Orefice and Shor testifies, the supreme court considers that adherence to immunity in actions between family members inter se (while permitting contribution) is sufficient to vindicate this policy.
[6] The dissenting justice in Pedigo, supra, at 610 P.2d 565, n. 1, points out the confusion engendered by the majority's reliance upon the quitedifferent holding in Holodook.
[7] Obviously, these contentions apply no matter what the basis of the parents' liability. There is no acceptable ground upon which contribution could be denied only in a supervision case, while permitted when other parental negligence is involved.
[8] Although Shor overruled Mieure, "insofar as ... inconsistent herewith", note 1 supra, Mieure involved an attempted contribution action against a husband and father for injuries caused both to his wife and to his children. Since Shor involved only an interspousal claim, it did not directly affect the Mieure holding concerning the children.
[9] The Raisen case represents the supreme court's determination that this "central principle of ... tort law, ... that wrongdoers should bear the losses they cause," Holodook v. Spencer, supra, 324 N.E.2d at 347, 364 N.Y.S.2d 872 (Jasen, J., dissenting) is outweighed by other public policy considerations so as to justify the continued immunization of family members from their wrongs in actions directly against them.
[10] See, Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).
[11] It must be acknowledged that the result makes Florida the worst of all possible jurisdictions for an injured child. He may not sue his parent directly; and any action against a negligent third-party may be inhibited or compromised by the fact that the third-party defendant can. Compare the suggestion in Torts  Parent and Child, 42 Brooklyn L.Rev. 125, 142-45 (1975) that the rule should be just the opposite, that is, one which permits neither immunity nor contribution. Perhaps this state of affairs will lead the supreme court to a modification of Raisen-Orefice, of Shor-Florida Farm Bureau, or both.
[12] We have determined to certify this cause to the supreme court as one involving questions of great public importance, as to whether and under what circumstances an action for contribution lies against the parent of an injured child.