486 So.2d 609 (1986)
McDONOUGH POWER EQUIPMENT, INC., Appellant,
v.
Charles Andrew BROWN, et al., Appellees.
No. 85-569.
District Court of Appeal of Florida, Fourth District.
February 26, 1986.
On Rehearing May 7, 1986.
Myron Shapiro, John D. Golden, and Wendy F. Lumish, of Rumberger, Wechsler & Kirk, Miami, and Alan C. Sundberg and George N. Meros, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for appellant.
*610 Joe N. Unger of Law Offices of Joe N. Unger, P.A., and Major & Logan, P.A., Miami, for appellees.
GLICKSTEIN, Judge.
In McDonough Power Equipment, Inc. v. Brown, 443 So.2d 1050 (Fla. 4th DCA 1984) (McDonough I), this court found no error concerning liability, but reversed and remanded for new trial on the sole issue of compensatory damages. Now the final judgment rendered as the result of the new trial is before this court. We affirm.
On a summer day more than seven years ago, when Charles Andrew Brown (Andrew) was eight, he was operating a self-propelled riding rotary lawnmower manufactured by appellant, when he fell, and his foot, caught under the mower, was injured. His parents brought suit on his behalf and their own. They sought compensatory and punitive damages on Andrew's behalf, based on theories of negligent design, breach of implied warranty and failure to warn. For themselves they sought merely recovery of medical expenses. The Browns' complaint was duly answered. McDonough stated as an affirmative defense the negligence or contributory negligence of the plaintiffs  the parents, for letting Andrew operate the lawnmower, and Andrew, for the way he operated it.
The case was tried to a jury. The jury received instructions regarding liability, as well as punitive damages, compensatory damages to Andrew for his personal injuries, and compensatory damages to his parents for medical expenses. One item on a special verdict form required the jury to state the percent of negligence attributable respectively to Andrew, his parents and defendant McDonough.
As this court stated in McDonough I, the jury brought in first a verdict that was internally inconsistent, and did the same on a second try. The trial court accepted their third attempt, but subsequently struck the punitive damages and reduced the parents' award by remittitur. This court held the elimination of punitive damages was correct because McDonough's conduct had not been shown to have been in gross disregard of the rights of others. McDonough I, 443 So.2d at 1051-52. The court held, however, that acceptance of the jury's third verdict totalling $380,000, only to reduce it immediately by $191,000, was an abuse of discretion. This court said the jury had to have been extremely confused to turn out the damages verdict that it did. Therefore, the court reversed and remanded for a new jury trial on the issue of compensatory damages only. Id. at 1052. That trial has now taken place, and defendant appeals again.
This time defendant/appellant assigns as a first error the special jury verdict form used to determine comparative negligence. Now, for the first time, appellant contends the form was fundamentally defective and resulted in a fundamentally erroneous and constitutionally infirm judgment. We disagree.
Only if there were fundamental or constitutional error would this assignment of error be presently reviewable, for appellant never objected to the use of the subject verdict form, and failed to raise the issue on the previous appeal. Failure to object to a verdict form regarding defects not of a constitutional or fundamental character constitutes a waiver of such defects. Papcun v. Piggy Bag Discount Souvenirs, Food & Gas Corporation, 472 So.2d 880, 881 (Fla. 5th DCA 1985); Gould v. National Bank of Florida, 421 So.2d 798, 802 (Fla. 3d DCA 1982); Robbins v. Graham, 404 So.2d 769 (Fla. 4th DCA 1981). Moreover, "[t]he law of the case precludes relitigation of all issues necessarily ruled upon by the [appellant] court, as well as of all issues upon which appeal could have been taken, but which were not appealed." State v. Stabile, 443 So.2d 398, 400 (Fla. 4th DCA 1984) (emphasis in original); Airvac, Inc. v. Ranger Insurance Co., 330 So.2d 467 (Fla. 1976). When one point has not been appealed on in a prior appeal on some other issue, that point becomes law of the case and cannot be revisited. Marine Midland Bank Central v. Cote, 384 So.2d 658, 659 (Fla. 5th DCA 1980). It may be, *611 however, that the law of the case that is implicitly established in an earlier appeal is subject to change as the appellate court's explicit erroneous ruling is, so long as the appellate court has jurisdiction, if otherwise the result will be manifestly unjust. See, e.g., Beverly Beach Properties v. Nelson, 68 So.2d 604, 607-08 (Fla. 1953), quoted in State v. LoChiatto, 381 So.2d 245, 247 (Fla. 4th DCA 1979).
We hold, however, that, in the instant case, not only was the use of the particular verdict form not fundamental or constitutional error, but, indeed, it was entirely proper. Appellant argues that because the parents' and the child's claims in the present case are independent, there should have been not one, but two separate questions on the issue of comparative negligence. We disagree.
The child's claim for his injuries and the parents' claim for medical expenses are independent only in the sense that the respective claims could be brought separately. In the event of separate suits, judgment in one suit would not estop the other, as parents suing as a minor's next friend are not deemed, for res judicata purposes, to be identical litigants with themselves suing in their own right for loss of the injured child's services and earnings or for medical expenses. E.g., Youngblood v. Taylor, 89 So.2d 503, 505-06 (Fla. 1956). The claims are not, however, independent in the sense that they arise out of separate transactions or occurrences. Although the plaintiffs in the instant case are distinctly separate parties, essential to both claims tried in this single action were identical facts resulting in the injury of one person, the minor child, Andrew. It was therefore entirely proper for the jury to be asked in a single question to apportion the negligence among the child, his parents and the lawnmower manufacturer. What could be more inconsistent than determinations that as to the damages to the child the negligence of the various parties compared in one way, but as to the medical costs incurred by the child's parents because of the same injury to the child the distribution of liability among the same parties was different? When one person was injured in one incident, the fault attributable to various parties can add up to only 100%, albeit different plaintiffs are able to claim different kinds of damages arising out of that person's injury.
Appellant relies on the out-of-state case of Vroman v. Kempke, 34 Wis.2d 680, 150 N.W.2d 423 (1967), to support its contention the jury should have been given separate comparative negligence questions for the damages claim of the child and the claim for medical expenses of his parents. In Vroman it was held that there should have been separate comparative negligence questions. However, there the special verdict apportioned 50% of the liability to the active negligence of the host driver and 25% to the passive negligence of each of two guest passengers who were suing for their injuries. The passive negligence of different guest plaintiffs could not be compared in the same question, because the passive negligence of one guest passenger could have no bearing on the passive negligence of the other. Having included both in the same special verdict question, the trial court was left to speculate that each passenger should be recompensed for 75% of her damages, when just as plausibly the jury's intention might have been 66 2/3% (the ratio that 50% bears to 75%). Because Vroman concerns two separate passively negligent persons' claims for their respective injuries in a common accident, Vroman is simply not apropos of the case at bar. Vroman and the instant case cannot be characterized as similar merely because in each there is more than one plaintiff suing a single defendant. More significant  and the distinguishing factor  is that in Vroman each of the plaintiffs was suing for her own personal injuries in the common accident.
What seems to revolt the present appellant most is that, although the jury attributed 60% of the fault to Andrew's parents, 40% to appellant, and 0% to Andrew, appellant must pay, under the final judgment, 100% of the damages awarded to Andrew *612 for his injury. Thus, responsibility for the parents' negligence, appellant argues, is effectively placed on appellant, as sole defendant. This, says appellant, violates the concept of joint and several liability and appellant's constitutional rights.
The Constitution guarantees a defendant a day in court and due process; it does not guarantee a particular result. Where adequate notice has been given, and a jury trial held, one may not claim one has been deprived of property without due process of law.
The instant case is not one of joint and several liability, as the parents were plaintiffs, not defendants. A policy principle implicit in the reasoning behind joint and several liability nevertheless appears pertinent: It is fairer that one wrongdoer be burdened with a fellow-wrongdoer's liability than that the innocent victim be saddled with the loss.
It has long been the established law of Florida that a parent's negligence may not be imputed to a plaintiff-child. Burdine's, Inc. v. McConnell, 146 Fla. 512, 1 So.2d 462 (1941). The intervening shift that has occurred from contributory negligence doctrine, barring recovery if one's negligence contributed to the harm, to comparative negligence doctrine, Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), has not affected the viability of this principle, nor is there any policy reason why it should.
A cognate principle was stated in Acevedo v. Acosta, 296 So.2d 526 (Fla. 3d DCA 1974). There the wife-driver's comparative negligence was applied to reduce the husband-owner's derivative damages arising from the wife's injuries, but there was no such reduction in the damages awarded the child-passenger or the father-husband-owner as a result of the child-passenger's injuries. The appellate court stated that "[T]he law in Florida ... is well-settled that absent evidence of a joint enterprise or some element of an agency relationship, the negligence of the driver of an automobile is not imputable to a passenger therein." Id. at 529.
We find instructive, even though there the issue was whether the mother, whose supervision of her child was negligent, could be held for contribution in the child's injury, the case of Quest v. Joseph, 392 So.2d 256 (Fla. 3d DCA 1981), (on rehearing en banc) quashed, 414 So.2d 1063 (Fla. 1982). Daren Joseph, a minor, was struck by a car owned by Edward Quest, and driven by Quest's wife, when Daren, riding his "Big Wheel" down an incline in his driveway, entered the street. Daren's father sued Mr. and Mrs. Quest and their insurer on behalf of Daren and himself. The defendants claimed contribution from Daren's mother in a third-party complaint. The cause was tried to a jury, which apportioned the negligence 10% to Leon Joseph, 25% to Mrs. Joseph, 10% to Daren and 55% to Mrs. Quest. The jury assessed Daren's damages at $150,000 and his father's damages at $17,000. The trial court found that Daren was entitled to recover $150,000 less 10% for his own negligence. The trial court found that the father, Leon Joseph, was entitled to recover $17,000 less 10% for Daren's negligence and 10% for the father's own negligence. The trial court found, on the basis of the defendants' third-party complaint against Mrs. Joseph, that the defendants were entitled to judgment against Mrs. Joseph in an amount equal to 25% of the total judgment entered against the defendants. This was not to be a reduction or an offset as to the claims of Daren or his father. The appellate court affirmed per curiam, and did likewise on a sua sponte rehearing en banc, which was occasioned by existence of a conflict with the court's prior decision in 3-M Electric Corporation v. Vigoa, 369 So.2d 405 (Fla. 3d DCA 1979). The principle thus adopted was that an action for contribution may be maintained against the parent of an injured child-plaintiff although the child cannot sue his parent directly, and even when the parent's negligence consisted of negligent supervision. 392 So.2d at 258.
The Third District Court of Appeal certified to the Supreme Court of Florida, as being of great public importance, the question *613 of whether and under what circumstances an action for contribution lies against the parent of an injured child. The Supreme Court ruled that such contribution is available, but only to the extent of the existing liability insurance coverage for the parent's tort against the minor. 414 So.2d at 1065. The Supreme Court held that it did not matter whether the parent's negligence was active or passive. The Court perceived its ruling as consonant with Ard v. Ard, 414 So.2d 1066 (Fla. 1982) (Unemancipated minor could maintain an action against a parent for injuries sustained in an automobile accident, to extent the parent had liability insurance coverage). In a footnote the court said explicitly a co-tortfeasor parent who was without liability insurance or whose insurance policy excluded coverage for family members could not be held for contribution. 414 So.2d at 1065 n. 5. The basis of the Supreme Court's reasoning was that usually injured minors must rely on their parents to bring suit on their behalf, and if the parents could be held personally liable, through contribution, for their own negligence, they might decide not to pursue the child's legitimate claim. A further damper on the parents' decision to sue on the child's behalf would be the fact that the injury award is the child's and none of the damages awarded the child may be used as family funds, or to set off the parents' liability. The Supreme Court made clear that its holding in Shor v. Paoli, 353 So.2d 825 (Fla. 1977), permitting a third-party tortfeasor to obtain contribution from a plaintiff's co-tortfeasor spouse, thus allowing the Uniform Contribution Among Tortfeasors Act to control over interspousal immunity, does not apply to the parent-child relationship.
Although no Florida case is quite on all fours with the present one, we do not view the facts to be so different as to present us with a case of first impression. There is ample authority for concluding that the use in the first trial of the special verdict form with a single comparative liability question for both damages issues and a plural number of plaintiffs  and the resulting apportionment, at the second trial, of the child's entire damages to the defendant/appellant  was not error.
We find no merit in appellant's second assignment of error, namely that there was not sufficient evidentiary support for the amount of damages awarded the parents for medical expenses. Determining the amount of damages, based on the evidence, is peculiarly within the province of the jury, see, e.g., Talcott v. Holl, 224 So.2d 420 (Fla. 3d DCA 1969), and an appellate court will not reverse such an award unless it is manifestly so excessive as to shock the conscience, e.g., Odoms v. Travelers Insurance Company, 339 So.2d 196 (Fla. 1976). Here the award bears a reasonable relation to the amount of damages proved, and therefore should not be disturbed. See, e.g., Food Fair Stores of Florida, Inc. v. Macurda, 93 So.2d 860 (Fla. 1957).
We affirm.
ANSTEAD, J., and FEDER, RICHARD Y., Associate Judge, concur.

ON REHEARING
PER CURIAM.
The petition for rehearing is hereby denied.
GLICKSTEIN, J., and FEDER, RICHARD Y., Associate Judge, concur.
ANSTEAD, J., specially concurs with opinion.
ANSTEAD, Judge, specially concurring.
I concur in the denial of rehearing and write only to note that even if there was merit to appellant's contention that it was error to submit a verdict form that did not require the separate comparisons by the jury, first, of the appellant's negligence, if any, with that of the child, and second, of appellant's negligence and that of the parents, such error was patently harmless in this case where the jury determined that the child was completely faultless. Having found absolutely no fault on the part of the child, the appellant's obligation to pay all of *614 the child's damages remains whether the child's lack of fault is part of a three-sided comparison of fault or a two-sided comparison. The only way that appellant's obligation to pay the child's damages would be reduced would be for the jury to assess some fault against the child. The jury's determination that the child was faultless has mooted the appellant's issue.